No. 20,191.

BESSIE F. LEWIS, *Appellee*, v. THE SELLS-FLOTO SHOWS COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. TRIAL—*Evidence—Findings—Verdict*. The evidence and findings examined and held to be such as to uphold the general verdict.

2. NEGLIGENCE—*Circus Seats—Personal Injuries*. Those attending circus performances need not assume that the seats provided by the management are unsafe or make a critical examination of their fitness for the use which patrons are invited to make of them.

3. SAME—*New Trial—Newly Discovered Evidence*. A new trial is not to be granted for newly discovered evidence until there is a fair showing of diligence, and unless such evidence would probably require a different decision.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed May 6, 1916. Affirmed.

*J. B. Larimer*, of Topeka, and *Frank M. Lowe*, of Kansas City, Mo., for the appellant.

*Sullivan Lomax*, of Cherryvale, *W. S. McClintock, Edwin A. Krauthoff*, and *A. L. Quant*, all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff attended a circus, occupying a seat from which she in some manner fell and broke her arm, and brought this action to recover damages. She alleged, in substance, that the seats were constructed upon a framework upon which boards were arranged above one another, frames or boards being placed underneath at convenient distances for support; that the board upon which she sat was lapped upon another, "and that the ends of the two boards had nothing whatever beneath them for support; that the other patrons of the show sitting upon the other ends of each of said boards held them in position so long as they remained upon said boards; that said plaintiff had no knowledge of the condition of said board or seat and that she believed the same to be safe; that at the close of the performance aforesaid, some parties sitting upon the opposite end of the board which she occupied, not knowing of any lack of support, arose and started to leave the show; that thereupon the seat which plaintiff occupied sank down and she fell a distance of twelve feet upon the ground." She recovered, and the defendant appeals.

It is contended that the verdict is not sustained by the evidence and special findings, and that error was committed in refusing a new trial because of newly discovered evidence. The findings, aside from the general questions of negligence and contributory negligence which were decided in favor of the plaintiff, were to the effect that the injury was caused by the board upon which she sat falling, and that she did not fall when standing or attempting to stand upon the board next to the one she had been sitting on.

"13. Did the plaintiff sit upon or near the end of a board which end was not supported in any manner during the entire performance of about one and one-half hours? Answer: Yes, but the board was not securely supported.

Lewis v. Shows Co.

"9. Would plaintiff have fallen if she, or some of the patrons of the show had not moved the seat board upon which her feet had rested, or the one upon which she sat, during the performance? Answer: Yes, because the board upon which she sat was not properly placed."

The negligence, according to the answer to question No. 5, consisted "in not placing the seat lengths properly on the supports."

The theory of the plaintiff seems to be that the end of the board on which she sat either did not rest at all or rested very insecurely and insufficiently upon the support, so that when those sitting farther away from the end arose, her weight, or that together with the weight of the others sitting near her, caused her end of the board to drop, thus precipitating her to the ground. The defendant's theory is that the fall was the result of a mere accident or of the gross carelessness of the plaintiff, who knowingly remained upon the unsupported end of the board. The testimony discloses that different witnesses came to different conclusions, some asserting that the slipping or pushing of the board on which plaintiff's feet rested caused her to fall, while others supported the plaintiff's theory and allegations. Her brother testified that the plaintiff, with another young lady and two gentlemen, were sitting in a row, the support and lap being between the two young ladies; that when the other young lady and one of the gentlemen arose to leave, he saw they could not get out right away and started to sit down; "then the three men at their left got up and the board plaintiff was sitting on fell"; that the board did not reach the stringer; that the board did not lap; that the board on which the witness sat rested on a stringer and was on top of the board on which the plaintiff sat. The testimony of those and other witnesses was to the effect that one board rested on the other and lapped the stringer, while the one underneath it, on which the plaintiff sat—that is, the end which should have rested on the stringer underneath the other board—did not reach or lap the stringer.

It is claimed that because the plaintiff admitted that the board gave or sagged a little, it was her duty to seek another location. Her escort testified that he noticed it was not oversafe, and wanted to buy a reserved-seat ticket. She testified, however, that she did not notice the giving of the seat until some little time before the end of the performance, when her

escort arose to remove his overcoat; that the seat looked like any other board; she did not notice anything out of the ordinary, and that it was supposed to be safe. The jury expressly found that she was not guilty of contributory negligence, and hence the responsibility for the accident can not be placed upon her. Surprise is expressed that she should try to hold the defendant responsible, but those attending circus performances need not assume that the seats provided by the management are unsafe, or make a critical examination of their fitness for the use which the patrons are invited to make of them.

The answer to question No. 13 is criticized as evasive, contradictory and uncandid and as one which really tells the whole story of the plaintiff's own gross carelessness. It is asserted with some dynamic force that five feet of a board seven inches wide and a fraction over an inch thick, projecting beyond the support, could not uphold for an hour and a half the weight of two persons of the size of the plaintiff and her escort. But whether the end of the board failed to reach the support, or whether, as the jury said, it was not securely supported, it was one provided for patrons to sit on, and, from the other findings, it fell without the plaintiff's fault. While like many another case, this one furnishes ground for a diversity of theories and conclusions, those reached by the jury were supported to such an extent that they can not be set aside.

No motion appears to have been made to require a different answer to question No. 13. Fault is found with the response to question No. 12, that the seat occupied by the plaintiff was supposed to have been placed in position for use before the afternoon performance. But however answered, this question could not control the situation as it existed in the evening when the injury occurred. Taken together, the special findings were not so essentially insufficient or inconsistent as to vitiate them or as to impair the general verdict.

The motion for a new trial upon the ground of newly discovered evidence was supported by affidavits to the effect that certain witnesses, if present, would testify that they personally inspected the seats before the afternoon and evening performances, and that they were properly adjusted and fixed; that

others who were present and helped arrange the seats person-
ally knew that they were properly constructed and placed. The
affidavit of the defendant's senior counsel stated that he had
diligently sought to find such witnesses and had visited the
circus at various places, but owing to the unusually early close
of the season of 1914 and to other matters, he had been unable
to find them; that in case a new trial should be granted he
could prove that the seats were properly in place by the tes-
timony of certain named witnesses who were with the show at
Cherryvale. One of these witnesses is, and since 1908 has
been, master mechanic and superintendent of canvas; another
is his assistant; the others seem to be employees. The affidavits
of a principal stockholder and of the manager said that they
did not know of the injury until after the suit was brought, and
stated why the witnesses were not found. The petition was
filed June 25, 1914, and the trial was begun December 10,
1915. The defendant introduced the evidence of one of its
proprietors, who described and furnished photographs showing
the alleged condition and construction of the seats; that of an
employee who was in charge of seating the people and dismiss-
ing the performance during the seasons of 1911 and 1912, ex-
plaining in detail the construction of the seats; that of another
who had been familiar with the seating arrangement in shows
for twenty years, and was with the defendant's show at
Cherryvale in 1912, and observed the seating arrangement at
other performances. These two employees testified touching
the effect of sitting on the unsupported end of a seat board.
The general manager also testified upon the same point and as
to the construction of the seats. From the showing made in
behalf of the motion for a new trial it appears that the dili-
gence of counsel was much greater than that of the officers
and agents of the company, and especially those having in
charge the seating. The assurance as to when some of these
witnesses could be procured, judging by the claimed inability
to procure them heretofore, is largely speculative. The sub-
stance of their desired testimony is that on the night of the
injury the seats were properly placed. Between the filing of
the petition and the time of trial there was sufficient time for
the officers and agents of the company, with reasonable dili-
gence, to procure sufficient testimony to present the case fairly

from the standpoint of the defendant, if indeed such were not in fact found and produced at the trial. The rule is that in order to require a new trial the newly discovered evidence must be of such character and strength as would with reasonable probability compel a different decision. (*Collins v. Belford*, 89 Kan. 92, 95, 130 Pac. 662, and cases cited.) Under the new civil code (§ 307), a new trial is not to be granted unless the trial court is of the opinion that the verdict or decision is wrong in whole or in some material part. In *Haughton v. Bilson*, 90 Kan. 360, 133 Pac. 722, it was said:

"Under the former practice the question was whether or not the newly discovered evidence was of such strength and character that it probably would have compelled a different decision. (*Sexton v. Lamb*, 27 Kan. 432.) Now the court is required to go further and consider the whole case, including the newly discovered evidence, and determine whether or not the verdict or decision is wrong." (p. 361.)

Some of the desired testimony indicated by the affidavits is clearly cumulative, and whether the other is cumulative or not does not clearly appear. At any rate, under the rule just quoted, we find no error in the refusal to grant a new trial. (*Daly v. Gregg*, 91 Kan. 506, 138 Pac. 614.)

The judgment is therefore affirmed.