No. 21,868.

JOHN S. WHITE, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Evidence—Hypothetical Question.* A hypothetical question summarizing plaintiff's antecedent evidence, submitted to expert witnesses for the purpose of eliciting their opinions as to the nature and permanence of plaintiff's injuries, examined, and held to contain no substantial element of fact which was not included in plaintiff's evidence narrating his injuries.

2. SAME—*Verdict—No Indication of Passion or Prejudice.* A verdict and judgment for $8,500 as damages on account of plaintiff's injuries, considered, and held that, in view of the evidence showing the extent, character, and probable permanence of those injuries, no indication of passion or prejudice warranting the interference of an appellate court can be discerned therein.

3. NEW TRIAL—*Properly Denied.* The facts adduced in support of a motion for a new trial considered, and held insufficient to require a reversal of the judgment, and insufficient to require an order granting a new trial.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed January 11, 1919. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *William Osmond,* of Great Bend, for the appellant.

*Ezra Branine,* and *Harry W. Hart,* both of Newton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages. The plaintiff was a workman in the defendant's railway machine shops at Newton. While plaintiff was engaged in detaching some mechanical contrivance from an engine, it became necessary to cut the nuts from certain bolts connecting it with the engine, and while he was kneeling by the side of the engine and holding a long chisel against one of the bolts, another workman, who was assisting him, swung a ten-pound sledge hammer, aiming it at the head of the chisel, but which missed the mark and hit the plaintiff a severe blow on the jaw, from which he received serious and lasting injuries.

Defendant admitted its liability, but questioned and disputed the extent of plaintiff's injuries; and it now appeals from the judgment for $8,500 in plaintiff's behalf, assigning errors in the admission of answers to hypothetical questions, in the excessiveness of the verdict, and in denying a new trial based upon newly discovered evidence.

1. To a witness, who was a physician, plaintiff propounded a long hypothetical question which covered the various phases of plaintiff's antecedent evidence, and which was designed to elicit the witness's expert opinion as to the ailments of the plaintiff and the likelihood of their continuance. In the text of this hypothetical question, one element of fact was—

"[Suppose] that he [plaintiff] was practically unconscious for some minutes?"

To another expert witness, the same general question included the criticised element of fact thus—

"[Suppose] that he was unconscious or partially unconscious for some minutes?"

And to still another witness, it was stated—

"[Suppose] he was knocked practically unconscious for some time?"

Defendant contends that this element of fact was not in evidence. Plaintiff testified that when he was hit by the sledge hammer and his head jammed against the engine wheel by the force of the blow—

"Everything turned dark for a little bit, and then I was lying on the floor. I knew what was going on, but I couldn't get up. . . After while some of the fellows came and picked me up.

"Q. Now at the time that you received this injury you say you did not become unconscious? A. It was a very short time, if any."

Another witness testified:

"I saw this man swing on the bar and miss it and hit Mr. White in the jaw, and Mr. White went down momentarily, and then tried to get up."

In view of the testimony just quoted, it cannot be said that this criticised element of fact involved in the hypothetical question was not within the general scope of the evidence. Moreover, if this element of fact did contain some slight departure from the testimony adduced, the court cannot discern how it prejudiced the defendant in any degree. Whether the plaintiff was totally unconscious or only partly unconscious "when everything turned black for a little bit," and whether his practical unconsciousness endured "for a little bit," or "momentarily," or "for a very short time," or "for a few minutes," the slight distinctions of this detail could not have had any substantial effect upon the opinions of the experts as to the character or gravity of plaintiff's injuries, nor upon their opinions as to the likelihood of their permanence, nor on the amount of damages awarded.

2. Touching the complaint that the verdict was excessive, the evidence fairly disclosed that before his injuries the plaintiff, an able-bodied man of 38 years, was earning $101.50 per month, besides occasional extra pay as "bonus" and for overtime work; he was painfully injured; he was confined to a hospital for many weeks with his head and jaw in a plaster cast; his jaw was broken and permanently knocked out of alignment; his injuries are such that he cannot eat food which requires mastication; there is an unceasing "buzz" in

his head; he cannot do hard work or sustained labor; and his earning capacity has been reduced to $45 per month in the menial service of a bottle washer in a dairy, etc.

In view of this evidence, the court can see no way to unsettle the verdict and judgment; it does not present a situation where the amount is so clearly disproportionate to the injuries sustained as to call for judicial interference with the jury's determination—at least not by an appellate tribunal. It cannot be said that the jury's verdict indicates passion or prejudice, and the amount of the judgment will have to stand.

3. In support of the motion for a new trial, the defendant produced certain affidavits. One of defendant's attorneys testified that plaintiff's testimony that he could not eat and could only walk a short distance was a surprise which defendant was unable to contradict at the trial. After the trial, defendant put two of its special intelligence officers in touch with plaintiff, and one of them made affidavit that at an elaborate supper he had seen the plaintiff eat heartily of everything—except steak and cold ham; the other testified to the same effect, and also that on several occasions he had seen plaintiff walk as far as seventeen and eighteen city blocks without apparent fatigue. But plaintiff's evidence was not that he could not eat. It was that he could not eat food which required chewing, such as meat, apples, and the like. The petition alleged injuries to the plaintiff's teeth, fracture and dislocation of the jaw, and the crushing and injuring of the muscles, tendons, and nerves of his face and head. It does not occur to the court that, pursuant to those allegations, it should cause surprise that evidence would be adduced that plaintiff had difficulty in eating. Touching the affidavits that about a month after the trial plaintiff had walked a distance of eighteen blocks in forty minutes without stopping and without apparent fatigue, that fact, considered in connection with all the evidence on the trial, might have warranted the district court in granting a new trial, if that court thought that the verdict was wrong or that the new matter was of sufficient consequence to have probably compelled a different verdict or a verdict for a substantially less amount (Civ. Code, § 307) ; but as this court has no serious misgiving

as to the justice of the net result, we cannot say that the district court erred in refusing a new trial. (*Lewis v. Shows Co.,* 98 Kan. 145, 150, 157 Pac. 397.)

As nothing approaching the gravity of reversible error appears, the judgment is affirmed.