No. 23,052.

R. A. ZEIGLER, *Appellee,* v. THE OIL COUNTRY SPECIALTIES MANUFACTURING COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Liability of Owner of Premises to Licensee Seeking Employment.* Damages may be recovered by a person who is injured while seeking employment in a manufacturing establishment, if he goes to the superintendent of the establishment to procure employment and is directed by him to see the foreman and is told where to go, and while attempting to find the foreman at the place indicated, is injured through negligence for which the establishment is responsible.

2. SAME—*Contributory Negligence—Findings—Verdict.* The general verdict, which included a general finding that the plaintiff was not guilty of contributory negligence, was not contradicted by the special findings of the jury, and the defendant was not entitled to judgment in its favor on the findings.

3. SAME—*Evidence Describing Place of Injury.* There was no error committed in admitting evidence to show the condition of the place where the plaintiff was injured.

4. SAME—*Physician—Cross-examination.* Where a physician testifies on cross-examination that he advertises, it is not error to refuse to allow him to be further cross-examined as to the effect advertising has on his admission into medical associations.

5. SAME—*Impeachment of Witness.* A witness cannot be directly impeached except by proving that his general reputation for truth and veracity is bad.

6. SAME—*Instructions.* Instructions requested were properly refused.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed March 12, 1921. Affirmed.

*Walter S. Keith,* and *Harold McGugin,* both of Coffeyville, for the appellant.

*A. R. Lamb,* and *Clement A. Reed,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered a judgment for injuries sustained by him in falling into a trapdoor while on the defendant's premises seeking employment. The defendant appeals.

The plaintiff went to the defendant's plant and inquired for employment of the superintendent, who referred him to the foreman and pointed to the door through which the plaintiff should go to find him. The plaintiff went as directed, fell into the trapdoor, and was injured. The trapdoor had no railing around it and, according to the testimony of the plaintiff, was raised just as he attempted to step on it.

Two questions stand out prominently—one is the defendant's duty to the plaintiff, and the other is the plaintiff's contributory negligence, if any.

1. A demurrer to the plaintiff's evidence was overruled. That demurrer was based on the contention that the plaintiff was a licensee and that the defendant owed him no duty except that it was under an obligation not to allow him to run into a hidden peril nor to cause him harm wantonly or willfully. The plaintiff meets this contention by insisting that he was an invitee after being directed by the superintendent to see the foreman.

The syllabus to *Plummer v. Dill,* 156 Mass. 426, reads:

"A women who goes to a building for her own convenience, to inquire about a matter which concerns herself alone, and not to transact with any occupant of the building any kind of business in which he is engaged, or in the transaction of which the building is used or designed to be used,

Zeigler v. Manufacturing Co.

is a mere licensee, and cannot recover from the owner of the building for injuries received by striking her head upon a projecting sign placed on a post at the corner of the landing, even if it is assumed that it was the duty of the owner to keep the entrance, stairway, and halls of the building reasonably safe for persons using them on an invitation, express or implied, that he negligently permitted them to be unsafe, and that his negligence caused the injury to the plaintiff, and that she was in the exercise of due care."

2 Cooley on Torts, third edition, page 1267, says:

"The owner or occupant of premises is not under any legal duty to keep them free or safe from the danger of obstructions, pitfalls, excavations, trap-doors or openings in floors for persons who go upon, into or through the premises, not by his invitation, express or implied, but for their own pleasure or convenience, though by his acquiescence or permission, and who, therefore, are mere licensees. Such a visitor enjoys the license subject to the attendant risk."

It has been held that one seeking employment on the premises of another is a licensee. (*Larmore v. Crown Point Iron Co.,* 101 N. Y. 391; 29 Cyc. 451.)

In *St. Louis, I. M. & S. Ry. Co. v. Wirbel,* 104 Ark. 236, 108 Ark. 437, and 112 Ark. 410, it was held that one who went to the office of a master mechanic to procure employment, and was there directed to see him in the railway yards, and then went into the yards and inquired for the master mechanic at a coal chute, and while standing there, was injured by machinery breaking, could recover for the injuries sustained.

In *Warner, Adm., v. Mier Carriage Co.,* 26 Ind. App. 350, it was held that one who was injured by falling into an elevator shaft while being shown about the premises by the superintendent for the purpose of informing the injured party concerning the duties of the employment which he was seeking, could recover damages for the injuries sustained by him.

In *McDonough v. James Reilly Repair & Supply Co.,* 90 N. Y. Supp. 358, the following language is found in the syllabus:

"One who comes on the premises of another to seek employment at the invitation of the owner's foreman, in accordance with a recognized custom, acquiesced in by the owner, is entitled to the exercise of ordinary care for his safety." (¶ 1.)

In that case, the plaintiff was injured while he was standing in line with a number of applicants in the defendant's machine shop. The plaintiff was there in response to an invitation given him by the defendant's foreman a day or two earlier.

Another decision of this character is *Albion Lumber Co. v. De Nobra,* 72 Fed. 739. There the injured person was seeking employment in a logging camp. He was told to get on a logging train, the property of the defendant, go to a certain place for his blankets, and return and go to work. While going for his blankets, the train was derailed, and he was injured. He recovered damages.

In *W. J. McGuire Co. v. Bridger,* 49 Can. S. C. Rep., 632, an applicant for employment was told to return the next day. He returned and while waiting stood near a boiler plate which fell upon him, causing injuries from which he died. The company was held liable.

A note on "Duty and Liability to Persons on Premises Seeking Employment" is found appended to *St. Louis, I. M. & S. Ry. Co. v. Wirbel,* as it is reported in 6 N. C. C. A., 935.

The plaintiff did not go to the defendant's premises for his own convenience, nor to inquire about matters which concerned himself alone. He went to seek employment. The defendant was engaged in a manufacturing enterprise and employed persons to assist in carrying on its business. The purpose of the plaintiff in going to the premises of the defendant was for the possible benefit of both. When the plaintiff inquired of the defendant's superintendent concerning employment, the plaintiff was directed to see the foreman and was in substance told where to go. That act of the superintendent took the plaintiff out of the class of persons known as licensees, if he were one before that time, and placed him within the class known as invitees.

This court has defined the duty of an invitor to an invitee in *Lewis v. Shows Co.,* 98 Kan. 145, 157 Pac. 397; *Reese v. Abeles,* 100 Kan. 518, 164 Pac. 1080; and *Needles v. Amusement Co.,* 104 Kan. 716, 180 Pac. 768. In *Reese v. Abeles,* the court said:

"The proprietor of a store is liable in damages to a customer who falls into an open stairway in the floor which is partially obscured in semi-darkness caused by piles of merchandise stacked thereabout, when the customer went into the vicinity of the stairway to inspect certain shelf goods nearby in response to a special invitation of the proprietor, who at the same time failed to give her a warning of the presence of the stairway." (Syl. ¶ 2.)

The direction given to the plaintiff to see the foreman and telling the plaintiff where to go, brings this case within the rule declared in *Reese v. Abeles.*

Zeigler v. Manufacturing Co.

2. The other principal question, that of contributory negligence, is presented by the instructions, by the general verdict, and by the answers to the special questions. The questions were answered as follows:

"Q. 1. Did the plaintiff ask the superintendent, Mr. Fulkerson, for the whereabouts of the foreman? A. No.

"Q. 2. Did the plaintiff ask anyone representing the defendant company for employment prior to the time he stepped into the open door as alleged? If so, whom? A. Yes, Mr. Fulkerson.

"Q. 3. If you find that the plaintiff is now afflicted with tuberculosis, what was the approximate cause? A. Do not know.

"Q. 4. Was the basement door open before the plaintiff entered the machine shop? A. Do not know.

"Q. 5. Was the plaintiff looking at the floor watching where he was walking just prior to stepping in the basement door, as alleged? A. No.

"Q. 6. Do you find that the defendant was negligent in failing to provide a guard or railing around the opening into which the plaintiff fell? A. Yes.

"Q. 7. Do you find that the superintendent of the defendant instructed or directed the plaintiff to go into the room where plaintiff fell into the opening in the floor? A. Yes."

The defendant insists that—

"The court erred in overruling the appellant's motion for judgment notwithstanding the verdict upon the special questions.

"The court erred in not setting aside the verdict rendered by the jury in this cause of action and granting the defendant a new trial, for the reason that there is an inconsistency in the answers to the special questions of the jury and the verdict by them returned.

"The answers to the special questions is a finding of contributory negligence on the part of the appellee."

These three propositions are presented under one head, and all are really merged into the last, which concerns the contributory negligence of the plaintiff. From the evidence, it appears that the plaintiff, at the time he was injured, was in a room occupied by dangerous machinery. It was the duty of the plaintiff to observe proper care to prevent injury to himself. He could not blindly run into dangerous machinery or places, be injured thereby, and hold the defendant responsible even if it had been negligent in protecting its machinery or dangerous situations. However, this question was by the instructions properly submitted to the jury, which by its general verdict found that issue in favor of the plaintiff. That finding is not contradicted by the answers to the special questions.

3. The defendant complains of the admission of evidence. The plaintiff, as a witness, testified in response to a question as follows:

"Q. Now, at the time this door is open, is there any railing or guard of any kind around this opening to prevent people from falling into the opening? A. No, sir; there is not."

There was no railing around the trapdoor, and it,was not error to permit the plaintiff to show that fact.

4. Doctor Hunter, a witness for the plaintiff, on cross-examination testified in substance that he advertised in the papers and was then asked the following question:

"Doctor, the very fact that you advertise prohibits you from joining the Montgomery County Medical Association, does it not?"

An objection to that question was sustained; the defendant complains of that ruling. Whatever there was in the fact of Doctor Hunter's advertising that reflected on his credibility as a witness was contained in his answer in which he practically admitted that he advertised, and the fact that he was denied admission to the Montgomery County Medical Association by reason thereof, did not further affect that credibility. It was not error to exclude that evidence on cross-examination.

5. The defendant in examining one of its witnesses, a physician, sought to show that the Montgomery County Medical Association had prescribed a code of ethics for physicians to follow in that county, and sought to show that a physician who advertised could not belong to that association for the reason that he was unethical. That evidence was excluded. It was an attempt to impeach Doctor Hunter, not by cross-examination, but by direct evidence, other than by showing his general reputation for truth and veracity. That cannot be done. (*Taylor v. Clendening,* 4 Kan. 524; *The State v. Eberline,* 47 Kan. 155, 27 Pac. 839; *The State v. Kirby,* 62 Kan. 436, 445, 63 Pac. 752; *The State v. Tawney,* 78 Kan. 855, 99 Pac. 268.)

6. Complaint is made of the refusal of the court to give certain instructions requested by the defendant. Those instructions in substance stated that the plaintiff was a licensee and gave the rules governing the liability of the defendant on that theory. The plaintiff was an invitee, and the instructions were properly refused.

The judgment is affirmed.