The opinion of the court was delivered by
Brewer, J.:
This case is an outgrowth of the one just decided, and comes to us from a ruling of the district court, on a petition filed for a new trial. It appears that the judgment in the case just decided was rendered on the 15th day of January, 1881, and this petition for a new trial was filed on the 1st day of November, 1881. The petition alleges that the judgment was obtained by false and incompetent testimony, and that the petitioner has since discovered new and important testimony, which, if introduced upon another trial, would compel a different judgment. Attached to this petition are the affidavits of three parties. To this petition for a new trial a demurrer was filed and sustained, and this ruling is the error complained of. As the entire record of the trial and proceedings in the original case is before us, in the proceedings in error to reverse the judgment in that case, we are in a position to consider advisedly the ruling of the district court on this demurrer. For, when a petition for a *433 new trial, supported by affidavits, is presented to the trial •court, that court is not concluded by the statements in such petition and affidavits, but may consider the same as affected by, and bearing upon all the testimony and all the facts as developed in the original trial; and if the case stood before ■us upon simply the petition for a new trial, the affidavits attached and the demurrer, all presumptions would be in favor of the rulings of the trial court. As for instance, that the testimony was not in fact newly discovered, or that it was cumulative, or that it was not such as.would, with reasonable certainty, compel a different decision. Turning now to the affidavits: One is of William Ortman, who testifies that a cubic foot of ice taken from the place whence the ice in controversy was taken, weighs sixty pounds. Another, that of A. L. Stevens, that prior to the partnership agreement he measured the ice in the Ryan ice-house, with a view of purchasing, and that the dimensions of the ice were 26,448 cubic feet, and that forty cubic feet make a ton of ice, and that there were therefore 660 tons then in the ice-house; that he had in his memorandum book the original figures made by him in measuring the ice, and that a copy of those figures was- incorporated in his affidavit. That of David Atchison, that in the year 1881, “he had in said ice house not less than two thousand tons of ice, and that said ice has been sold at retail, and has not held out over two hundred and fifty tons; that a large portion of the ice has melted in the building; that since affiant testified on the trial of this cause he has discovered that said Ryan ice-house is unfit to keep ice during the summer; that the sides are open, and the saw dust, which is filled in between the sides of the building, has become solid in places all around the house, and in some places between the studding has blown out, and the hot winds •during the summer blow against and through the ice, and that affiant now can see and knows the cause of the loss of ice which was in said house, belonging to Sexton and Lamb, in 1880, and the condition of the building was the same during the summer of 1880 as during the present year; and that *434 affiant now knows that the loss of 660 tons of ice during 1880 was little, if any, less than the per cent, of loss during1 1881, on the ice of affiant. The ice put in by affiant was-thicker than the ice put up by Sexton during 1880, from three to five inches, and the house was full.”
Now .in reference to the granting of new trials on the ground of newly-discovered testimony, certain rules have become established; one is, that the testimony must be in fact newly discovered, and that it could not have been discovered, with reasonable diligence, before the trial; another.is, that it must not be cumulative; and a third, that it is of such a character and strength as would, with reasonable probability, have compelled a different decision. In the light of these-rules, and having in view the testimony that was given upon the trial, the ruling of the district court in sustaining this demurrer must' be affirmed. The fact that A. L. Stevens measured this ice before the partnership agreement was known to the defendant at the time of the trial, for he had been negotiating, with Stevens for a sale of it, and testified that it was measured by Stevens and James Sexton, and found to be 660 tons, and he introduced the testimony of James Sexton that he assisted Mr. Stevens in measuring, and that it was found to be 660' tons; and no reason was then given, or is now given, why Mr. Stevens was not also subpenaed as a witness, and the information which he possessed given in evidence on the trial.. Two witnesses' testified upon the trial as to the number of’ cubic feet which it takes to make a ton of ice, and Mr. Ortman, whose affidavit is attached to this petition, was a witness-upon the trial, and testified that his ice-house was situated near the Ryan ice-house, and his ice taken from the same-creek. As to the testimony of David Atchison, the question-is not so clear. The fact which he discloses in his affidavit is a fact occurring in his own experience since the trial, and unquestionably tends to support the claim of the defendant that there were 660 tons of ice at the time of the partnership-agreement; but still such testimony would not be conclusive in respect to the matter. The court will take judicial notice- *435 that the summer of 1881 was a very long and a very hot season — in this respect differing materially from that of 1880. If the defects named by witness in his affidavit existed in 1880 as well as in 1881, they are defects which could have been ascertained by examination, and as to their existence or nonexistence there might be opened'a new field of perhaps doubtful and conflicting testimony. It would not do to say that from the experience of Mr. Atchison in 1881, unsupported by other testimony, the court, against the testimony given upon the trial, must have come to a different conclusion. Furthermore it is seldom, if ever, that a trial once finished should be disturbed and the questions at issue again litigated upon the mere proof that facts have occurred since the trial which tend to cast a doubt upon the correctness of the conclusions reached. It would be' perceived that the facts narrated by Mr. Atchison in his affidavit did not exist at the time of the trial, and if his experience during 1881 would compel a setting aside of the judgment and the granting of a new trial, would not a different experience by some succeeding occupant in.1882 at the close of this year also compel a setting aside of any judgment that might be rendered now in favor of Sexton? The query naturally arises, who occupied this ice-house before 1880, and what was their experience with it, and why was not their testimony obtained on the trial? And was not after all the testimony offered by him merely cumulative — a little stronger, perhaps, than that given by the witnesses on the trial, but along the same line and not absolutely conclusive as to the facts at issue? While we do not hold that the question is free from doubt, still we think that there is not enough in this affidavit, or in the entire showing, to justify us in disturbing the ruling of the district court. Counsel for plaintiff closes his brief with these words:
“ The true test on the question of a new trial should be: First, has the truth prevailed? Second, has justice been done? And third, will a new trial accomplish these ends?
“Such was the intention of the legislature, though ingenious litigants have sought to introduce technical rules to prevent its accomplishment, which rules should yield when they fail *436 to accomplish what was the boast of the English jurist, ‘that there is no wrong without its corresponding remedy/ While the pride of the jay hawker is ‘to get his neighbor’s property.’ ”
This language is strong and forcible; but the query is, whether it is specially applicable in favor of his client. Equity never delights in seeing one of two equal partners suffer large loss and the other make large gain out of the same transaction. Now according to the defendant’s proposed settlement, the outcome of the partnership transactions would stand thus: Cash paid by John Lamb, $800; cash to be received by him, $150.77!; and the team, valued at $200. On the other hand, the account of William Sexton would stand: Cash paid for rent of ice-house, $200; cash paid for putting up ice, $400; value of team, $200; total outlay, $800. Contra: Cash received from John Lamb, $800; cash received from the agent as the proceeds of sales, $930.77!. In other words, the outcome would be a loss to one partner of $449.22!, and a profit to the other of $930.77-|. Who, from this statement, would seem to be playing the part of the “jayhawker”? On the other hand, according to the result as reached by the court, if the judgment in favor, of Lamb be collected, he will be out $800 in cash, and will receive $707.69 in cash, and the team, valued at $200, or a profit of only $107.69; while Sexton — who has received $800 from Lamb, $930.77! from the agent, and is to receive one-half the money still in the hands of the agent, to wit, $75.56, (total, $1,806.33!,) and for rent, putting up ice, and team, is out $800, and is to pay the plaintiff $623.13 — will still hold in his hands as net profit of' the transaction, $383.20!. So that, by the court’s conclusions, the defendant still has a much larger net profit from the transaction than his equal partner. This of course is exclusive of the question of costs and expenses of litigation; but it is surely a fairer and more equitable result than that proposed by the defendant. For this reason also we think the conclusion reached by the district court should not be disturbed, and its ruling will be affirmed.
All the Justices concurring.