THE OMAHA, NIOBRARA, AND BLACK HILLS RAILROAD
  COMPANY, PLAINTIFF IN ERROR, v. JAMES O'DON-
  NELL, DEFENDANT IN ERROR.

1.  New Trial: EVIDENCE. Where the evidence taken on the hear-
    ing of a petition for a new trial, in an action for personal injury,
    tends to show that the injury was committed in a somewhat
    different manner from that testified to by some of the witnesses
    on the trial, but does not negative the commission of the in-
    jury, it is insufficient to justify the vacating of the judgment.

2.  ———: ———. The question is not whether a jury might be
    induced to give a different verdict ; but whether the legitimate
    effect of the new evidence would be to require a different verdict.

3.  ———: BILL OF EXCEPTIONS. Where a new trial is sought
    upon a petition filed after the term at which the judgment was
    rendered, the evidence on the trial as well as the newly discov-
    ered evidence must be set out in a bill of exceptions.

4.  ———. Petition, Held, Not to state a case for relief.

ERROR to the district court for Platte county.   Tried
below before POST, J.

*John M. Thurston, W. R. Kelly,* and *Joel S. Shropshire,*
for plaintiff in error, cited :   *State v. Murray,* 3 S. W.
Rep., 397.   *Ogden v. State,* 13 Neb., 438.

*S. S. McAllister, Sampson & Millett,* and *W. A. McAllis-
ter,* for defendant in error, cited :   Hilliard New Trials,
499.   *Larrimore v. Williams,* 30 Ind., 18.   *Kirby v.
Childs,* 10 Kan., 644.

MAXWELL, J.

The defendant in error recovered a judgment of $5,000
against the plaintiff in the district court of Platte county,
which judgment was affirmed in this court, the case being
reported in 22 Neb., 475.   Afterwards the plaintiff herein

48

filed a petition under the statute for a new trial, and certain testimony was taken thereunder, and the cause again submitted to the district court, which found for the defendant and dismissed the petition.

The plaintiff alleges in its petition that, "on the first day of May, 1886, the said James O'Donnell filed his petition in this court against this plaintiff, claiming damage in the sum of $10,000, for personal injuries received by reason of a collision of a train of the plaintiff's and a team and wagon of said O'Donnell's, whereby the said O'Donnell's team was killed, the wagon destroyed, and himself thrown out and badly injured.

"Plaintiff says that the fourth paragraph of the said petition is as follows: 'That in consequence thereof the locomotive struck the plaintiff's said team, killed his two horses, overset his wagon, destroying the same, with the said harness attached to said horses and wagon, and plaintiff was then and thereby thrown violently out of his said wagon on the ground, with such force as to greatly and permanently injure him in his back, hips, arms, head, and other parts of his body.'

"Plaintiff says that the said cause was tried to a jury on the 27th day of January, 1887, and a verdict rendered therein for the plaintiff for the sum of $5,500; that said verdict was set aside and a new trial granted in this court, and that on the 9th day of April, 1887, the cause was tried again, and a verdict rendered therein for the plaintiff for the sum of $5,000; that on the 18th day of April, 1887, a judgment was rendered on said verdict for said plaintiff.

"Plaintiff herein says that the testimony offered and produced on the second trial of the said cause was, in effect, supporting the allegations of said petition and the fourth paragraph thereof, to-wit, that said plaintiff was thrown out of his wagon by reason of the collision, and was thereby seriously and dangerously injured.

"Plaintiff says that prior to the trial in said cause it

made diligent efforts and search to find witnesses who claimed to know and be familiar with the circumstances of said alleged accident to said O'Donnell, but was unable to do so, and was compelled to rely for its defense entirely upon the testimony and the case as produced and made by the said O'Donnell.

"Plaintiff says that the said O'Donnell testified on the second trial of said cause that, when the engine struck the team, and killed it, it broke his wagon and harness and threw him out and hurt his back and head and right arm; also, upon further examination, he testified that he was injured pretty badly in his hips and back and head and right arm, and had a pretty bad cut on his head.

"Plaintiff further says that the testimony of Abraham Smith, on both trials of said cause, and especially on the second trial, was to the effect that the said O'Donnell was seriously injured by being thrown out of his wagon, so much so that he had to be helped to his feet, and had to be helped and aided in walking. He testified further that the witness C. T. Austin aided the said O'Donnell to his feet, thus permitting the inference to go to the jury that the said O'Donnell was thrown out of his wagon and seriously injured.

"Plaintiff says that it was unable to disprove this testimony; that so far as it had been able to ascertain up to that time, the said Abraham Smith, C. T. Austin, and Mabel Smith were the only eye-witnesses to said accident, and plaintiff had no reason to believe that they were not swearing to the truth, and the whole truth.

"Plaintiff says that since the second trial of said cause, and since the term at which the second trial occurred, it has learned, and plaintiff verily believes, that it is in a condition to prove that said O'Donnell was not thrown out of his wagon by reason of the collision, that his wagon was not overturned by reason thereof, and that he was not thereby seriously or otherwise injured..

"The plaintiff has within the last few days learned of a witness by the name of George Hoyt, who saw the said accident, and, as plaintiff is informed, was one of the first persons at the place after the accident occurred, and that he is familiar with the facts attending the same; that he will swear that the said O'Donnell was able to walk about and talk; that he was not seriously hurt, as the said O'Donnell and his said witness, Abraham Smith, would make it appear.

"Plaintiff says that it has recently learned, also, that the said C. T. Austin will testify that he did not help O'Donnell to his feet, and that he does not believe any one aided or helped the said O'Donnell to walk or go about, and that he was not seriously injured by reason of said accident.

"Plaintiff says that the said Hoyt was not called by the said O'Donnell as a witness in either trial, and that plaintiff was not aware of the existence of such a witness, or that he knew any of the facts relating thereto until within the last few days.

"Plaintiff also says that the said C. T. Austin was not called as a witness for the said O'Donnell on the second trial, and that on the first trial of said cause he did not testify as to the condition of the said O'Donnell, as he is now willing to do.

"Plaintiff further says that the witness for O'Donnell, to-wit, Abraham Smith, since the second trial of said cause, and since the term at which it was tried, in a conversation with one George R. Bullock, in the presence of one Charles Dornbusch, told the said Bullock and said Dornbusch that he witnessed the said accident to O'Donnell, and saw the whole of it, and that the wagon in which O'Donnell was riding at the time was not overturned by said collision.

"Plaintiff further says that the said O'Donnell, on the second trial of this cause, testified in his direct ex-

amination that he looked back once at the point where the wagon road branched off from Second street to see if a train was coming, and that he did not see any; that in his cross-examination at the same trial he testified that he looked back again when about half way between where he looked back the first time and the crossing of the accident, and that he could see the track and did not see the train approaching.

"Plaintiff says that within the last few days it has learned the names of several witnesses, one by the name of Brooks, and the others whose names and residences are yet unknown, but whose testimony plaintiff will be able to procure as it verily believes within a short time, by whom the plaintiff says it will be in a condition to prove that the said O'Donnell did not look back for the approaching train at the point stated by him in his testimony.

"That the said witnesses will swear that a party of them were in a wagon driving towards St. Edwards from the north; that they passed O'Donnell as he was riding in his wagon going north, that evening, and that the said O'Donnell was bent over in a reclining posture in his wagon, apparently fast asleep; that they called to him and that he failed to hear or recognize them.

"That the said Brooks will swear he also met the said O'Donnell as he was riding in his wagon, within a few hundred yards of the crossing where the accident occurred, on the evening that it occurred, and that he was still lying in a reclining posture in his wagon, with his head bent down, apparently fast asleep.

"Plaintiff says that it could not by the exercise of reasonable diligence have discovered this testimony prior to this time; that it has only been since the trial of the cause, when the witnesses for the said O'Donnell deemed that the judgment could not be set aside, that they have concluded to make these admissions of material facts.

"Plaintiff submits that if the said O'Donnell in riding

out of town that evening was asleep in his wagon at the point designated by the testimony of the witnesses aforesaid, then he did not look back for the train or use ordinary caution, as he was bound to do to preserve himself from danger, and as he testified that he did."

On the trial of the petition the plaintiff in error introduced certain portions of the testimony of the defendant in error, and of Mabel Smith and Abraham Smith, which was given on the former trial, and also that of a Mr. Austin. The principal object of most of this testimony was to prove that Abraham Smith, after having given his testimony, had explained the matter to some of the witnesses in such a way as to vary somewhat from his testimony given on the witness stand. Smith himself was not called as a witness, nor are the material facts in his testimony denied. The testimony introduced, if given its full force and effect, simply shows that the accident may have occurred somewhat differently from that proved on the former trial. There seems to be no denial of the negligence of the plaintiff in error, nor is there evidence to justify the court in setting the judgment aside.

When a petition or motion for a new trial is grounded upon the discovery of new or material evidence, our practice requires that the newly discovered evidence should be disclosed. This is required that the court may be enabled to form an opinion whether, by the introduction of such evidence, a different verdict ought to be obtained. In considering the motion, the court will not inquire whether, taking the newly discovered evidence in connection with that exhibited on the trial, a jury *might* be induced to give a different verdict, but whether the legitimate effect of such evidence would be to require a different verdict. In the trials of issues of fact, the court passes upon the competency of evidence, and the jury on the credibility and effect of testimony. But after verdict, when the motion for a new trial is considered, the court must judge not only of the

competency but of the effect of evidence. If, with the newly discovered evidence before them, a jury ought to have come to the same conclusion they have done, it would be worse than useless to grant a new trial. The effect would be to add to the expense of the litigation, and delay parties in obtaining their rights. *Lessee v. Park*, 4 Ohio, 44-45. *Simpkins v. Wilson*, 11 Ind., 541. It is not enough that a party has discovered evidence which would strengthen his case, if such evidence is not sufficient to justify a jury in finding a different verdict. *Fleet v. Hollenkemp*, 13 B. Mon., 219.

Where a new trial is sought upon a petition filed after the term in which the judgment was rendered, the cause assigned being newly discovered evidence, the evidence on the former trial should be presented to the court, so as to enable the court to determine whether or not the new evidence would probably change the result, or whether the testimony is merely cumulative. *Ruddick v. Ruddick*, 21 Ind., 163. *Cowden v. Wade*, 23 Id., 471. *House v. Wright*, 22 Id., 383. *Thompson v. Callison*, 27 Tex., 438. *Huntington v. Drake*, 24 Ind., 347. *Freeman v. Bowman*, 25 Id., 236. *Kirby v. Childs*, 10 Kas., 639.

The petition fails to state facts sufficient to justify the interposition of the court. It is not sufficient for a plaintiff to allege, "That it has learned, and plaintiff verily believes that it is in a condition to prove," certain things, but there must be a direct allegation as to the existence of certain facts which the plaintiff is then prepared to establish. While the verification of the petition need only be made upon belief that the facts stated therein are true, yet the allegations in the petition must be direct and positive and not by way of inference. The petition is faulty in this regard, and fails to state a case entitling the plaintiff to any relief. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.