THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. CELIA E. ROWE, as *Administratrix* of the estate of *Jonathan Pelton*, deceased.

No. 7854.

1. RAILROAD COMPANY—*Action for Injuries—Loss of Wages.* In an action brought by P. to recover damages for injuries claimed to have been sustained by reason of the negligence of an employee of the railroad company, where P. subsequently dies from a disease not the result of such injury, and the action is then revived and prosecuted in the name of his administratrix, and where it is shown that such mortal disease necessarily disabled him from work for a period prior to his death, the jury have no right to include in the damages awarded the administratrix an allowance for loss of wages during the period when his mortal sickness would necessarily have prevented him from working.

2. ——— *Measure of Damages.* In such an action, the measure of damages after the death of the plaintiff remains the same as before, and the administratrix is entitled to have included in the

verdict the same allowance for pain and suffering of the deceased as the original plaintiff would have been entitled to if made in his lifetime.

3. INCONSISTENT FINDINGS—*Unavoidable Accident—Assumption of Risk.* The special findings examined, and *held* insufficient to authorize a judgment in favor of the defendant notwithstanding the general verdict, and that the injury to the plaintiff is not conclusively shown, either by the evidence or the special findings, to have been the result either of accident or of a risk which the plaintiff assumed.

4. DUTY OF JURY—*Verdict, When Set Aside—New Trial.* The jury ought fairly, candidly and carefully to consider every question duly submitted to them in the case; and where it can be said, from the special findings and from the assessment of damages that they have disregarded the rights of the defendant, and purposely made an excessive allowance in favor of the plaintiff, and have carelessly and inaccurately answered the questions submitted to them, so that it is impossible to ascertain what their findings are on important issues in the case, the verdict should be set aside and a new trial had.

### Error from Atchison District Court.

THIS action was commenced by Jonathan Pelton to recover damages for injuries received while employed by the railroad company as a section man in unloading ties from a box car, and piling them a little way from the track. It appears that four or five men were in the car, taking the ties out, and six men were on the ground, picking them up, and placing them on the piles. While Pelton was standing with his back toward the car, shoving a tie back on one of the piles, a tie came out of the car door in such manner that it ended over and struck him on the back part of the leg and heel, causing a severe injury. Pelton's injury was received on the 2d day of May, 1888. He died on November 3, 1889, from a disease of the kidneys and bladder, and was at the time of his death about 63 years old. The action was thereafter revived in the name of his administratrix, and afterward tried by

a jury, who rendered a general verdict in favor of the plaintiff for $4,000.   The ground on which the plaintiff based her right to recover was that the tie which struck Pelton was negligently and carelessly thrown out of the car, and permitted to fall on him, without any warning having been given, and without any fault on his part.   Seventy-five special questions were submitted to the jury.   Among the questions and answers are the following :

"Ques. 11.  When said employee that handled this tie in the car was getting the tie in position to put out of the car door, did said tie slip or bound so as to get out of the door in an unusual manner?   Ans.  Yes.

"Q. 12.  Was not the usual way of putting these ties out of the car to extend one end out of the door of the car, and then slide the tie so as to land it on the ground?   A.  Yes.

"Q. 13.  In trying to get this tie that struck Pelton in a position in the door so that it could be thrown out in the usual way by sliding it down, is it not a fact that the tie fell on the car door in such a manner as to bound or jump over?   A.  Not on the door, but on the skid.

"Q. 14.  Was one John Brickell the person in the car who was handling the tie that injured said Pelton? A.  Yes."

"Q. 17.  Is it not a fact that said Brickell accidentally lost control of the tie, which prevented the tie from being landed on the ground directly opposite the car door?   A.  Yes."

"Q. 22.  From what disease or mortal sickness was Pelton suffering when he died?   A.  Bladder and kidneys.

"Q. 23.  How long had he been suffering from such disease before his death?   A.  We do n't know.

"Q. 24.  Was said disease chronic, and had he suffered from it for some months before, so as to lay him up from work?   A.  No.

"Q. 25.  What part of the time from the date of Pelton's injury by the tie to the date of his death was

he unable to work because of said disease or sickness other than the injury by the tie.    A. No time.

" Q. 26. How many days was said Pelton kept from work by reason of said injury to his heel?    A. About 18 months, or 468 working days.

" Q. 27. What were his services worth per day during said time?    A. Agreed to $1.20.''

" Q. 29. If you find a general verdict for the plaintiff, state what part thereof is for the loss of personal services by the deceased.    A. $561.60.''

" Q. 33. If you find a general verdict for the plaintiff, state what part thereof is for pain and suffering.    A. $3,438.40."

" Q. 57. During the unloading of said ties prior to said accident, is it not a fact that they landed on the ground in different positions?    A. Yes.

" Q. 58. Was there any particular method followed for sliding the ties out of the car door?    A. No.''

" Q. 60. Did said ties land on the ground in different directions and positions?    A. Yes.''

" Q. 62. In unloading ties from the car, did some end on the ground, and then fall over?    A. Yes.

" Q. 63. Did some of said ties land on the ground endways to the car?    A. Yes.''

" Q. 66. In removing said ties from the car, were some of them dropped on the skid so as to slide or jump out?    A. Yes.

" Q. 67. How did the tie that hit Pelton's heel land on the ground with reference to other ties that had previously been put out of the car?    A. About the same way.

" Q. 68. Is it not a fact that there was no particular place or position that the ties were landed on the ground out of said car door?    A. Yes.''

" Q. 72. Were the men on the ground working within 10 or 12 feet of said car door?    A. Yes.

" Q. 73. In the usual and ordinary way of putting out said ties, how close to said door could a person safely stand?    A. 8 to 12 feet.''

The defendant moved for a judgment in its favor on the special findings of the jury, notwithstanding

the general verdict, and also moved for a new trial, both of which motions were overruled. It brings the case to this court. The opinion herein was filed February 8, 1896.

*A. A. Hurd*, and *Mills, Smith & Hobbs*, for plaintiff in error.

*Fenlon & Fenlon*, and *J. T. Allensworth*, for defendant in error; *W. L. Bailey*, of counsel.

The opinion of the court was delivered by

ALLEN, J. : It is insisted that both the evidence offered at the trial and the findings of the jury show that the tie which injured Pelton was thrown out of the car in the usual and ordinary manner, which was known to Pelton, and that the risk of pursuing his employment as the work was being carried on was assumed by him. The special questions submitted to the jury at the request of counsel for the railroad company were very artfully drawn, and some of the answers tend to uphold this contention; but, on a consideration of all the findings, and all the evidence on which they are based, we cannot say that the risk was assumed by Pelton. There is evidence tending to show that the tie which struck Pelton came out of the car in quite an unusual manner, and there is also evidence tending to prove that it was incumbent on those who were in the car to look out, to some extent at least, for the safety of the men on the ground. The general verdict in favor of the plaintiff includes a finding in her favor of every fact which there was evidence tending to support necessary to uphold the verdict, and not directly negatived by the special findings. Taking all the findings together, we cannot hold that the risk was assumed.

It is strenuously urged that the injury in this case was purely accidental, and that this is shown by the findings of the jury, especially the seventeenth, in which they say that Brickell accidentally lost control of the tie. In its ordinary use, the word "accidental" does not necessarily negative the idea of negligence. In ordinary conversation we often speak of a calamity as an accident without regard to its cause, and without considering whether it was the result of negligence or not. The seventeenth question was not so framed as to fairly challenge the attention of the jury to the question whether Pelton's injury was purely an accident, occurring without the fault of any one, or not. The fifteenth question was whether Brickell purposely injured Pelton, which the jury answered in the negative. We think it clear, when the general verdict and all the questions and answers are considered together, that the jury regarded Brickell as negligent in permitting the tie to go out as it did, though he did not intend to injure anyone with it. The demurrer to the evidence offered by the plaintiff and the motion for judgment on the special findings were properly overruled.

A motion for a new trial was made, upon the grounds, among others, that the special findings of the jury were inconsistent with the general verdict and with each other, and that the verdict was excessive, contrary to the evidence, and given under the influence of passion and prejudice. It is also insisted that, although the action for the injury survives, the element of damages for pain and suffering resulting from it does not survive, but is personal to and dies with the person injured. The case of *Cregin v. Railroad Co.*, 83 N. Y. 595, is cited in support of this contention. Although the statute of New York under consideration

in that case is somewhat different from ours, it must be conceded that the reasoning of the court sustains the contention of the plaintiff in error, but we are not satisfied with the conclusions reached by that court. By our statute a cause of action for an injury to the person survives. The court of appeals of New York makes a distinction between what it terms pecuniary losses, which diminish the estate which would have gone to the personal representative, and losses personal to the injured party affecting only his feelings. But Jonathan Pelton had one entire cause of action, prior to the day of his death, against the railroad company. He had as full and complete a right to recover for the element of pain and suffering as for that of loss of wages. If he had recovered his damages in his lifetime, whatever he did not expend before his death would have been assets belonging to his estate. The dollars awarded for pain and suffering would have differed in no manner from those awarded for loss of wages, and would have been subject to precisely the same rules of distribution. We think the entire cause of action survived, and in this view we are sustained by the supreme court of Illinois. (*Holton v. Daly,* 106 Ill. 131 ; *Railroad Co. v. O'Connor,* 119 id. 586.) The argument drawn from decisions as to the nature of the recovery under section 422 of the code, which gives a cause of action where none existed at common law, has no application to causes of action which are made to survive under section 420, nor those actions already begun which section 421 of the code declares shall not abate.

We find it extremely difficult to harmonize the various findings of the jury, yet, if there were no other questions, it is possible that, in view of the artful manner in which the questions were framed, of the

unfairness of many of them, and of the rule that the general verdict is a general finding in favor of the plaintiff on every material fact not directly negatived by the special findings, we might uphold the verdict. But the jury have found that Pelton died from a disease of the kidneys and bladder. The evidence shows that that disease was chronic, and must have continued for a considerable period of time. According to the testimony of one physician, he would have been unable to work for several weeks, months perhaps. In assessing the damages, the jury have allowed full wages for every working day from the date of the injury to the date of his death, without any allowance whatever for loss of time occasioned by the mortal disease of which he died. Although the gross sum allowed for loss of time is not large, the allowance shows a want of that care and discrimination on the part of the jury which they ought to have exercised. The railroad company, clearly, was not liable for loss of time which Pelton would inevitably have sustained from causes other than the injury. If he was rendered unable to work by disease in no manner resulting from it, he could not have been subjected to loss of wages during that time by the injury, for he could not in any event have earned any. The jury allowed $561.60 for loss of wages. They also allowed $3,438.40 for pain and suffering. As the injured man lived and suffered only a year and a half, this allowance seems very liberal, being at the rate of more than $2,200 per year. It is true that no definite measure can possibly exist for damages of this kind. No one can say just how severely another has suffered, nor just how much money would be an equivalent for that suffering. A comparison of the allowances made in other cases with the verdict in this impresses us

that it is very liberal, and when taken in connection with the indiscriminating allowance for loss of time, and the somewhat careless and conflicting answers to special questions, we are forced to the conclusion that the jury have failed to give this case that fair and candid consideration it demanded, and that a new trial should be awarded.

The judgment is reversed, and a new trial ordered.

All the Justices concurring.