## MIISSOURI, K. & T. RY. CO. v. SIMERLY.

No. 8285—Opinion Filed April 15, 1919.

(180 Pac. 551.)

(Syllabus.)

**1. Railroads—Injuries to Live Stock—Proof—Circumstantial Evidence.**

The fact that an animal has been killed by passing train may be proved by circumstantial evidence.

**2. Evidence — Circumstantial Evidence—Sufficiency.**

Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury.

**3. Railroads—Circumstantial Evidence—Questions for the Jury.**

Where, in a civil case, it is sought to prove a fact by circumstantial evidence, and the circumstances taken separately or collectively reasonably tend to support the facts sought to be proved, then it is a question for the jury to determine which of two theories the circumstances tend more reasonably to support.

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by L. W. Simerly against the Missouri, Kansas & Texas Railway Company.

Judgment for plaintiff, and defendant brings error. Affirmed.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

G. C. Spillers, for defendant in error.

HARRISON, J. This action was begun in the justice court of Tulsa county, by L. W. Simerly against the Missouri, Kansas & Texas Railway Company, for the loss of a cow, alleged to have been negligently killed on the railroad right of way. The suit was for $75, the verdict and judgment was for $100, from which the railroad company appealed to the district court, where upon a retrial Simerly obtained judgment for $50, from which the railroad company appeals to this court for review.

There are four specifications of error, which are grouped and presented under two propositions: (1) The court erred in overruling the railroad company's demurrer to the evidence. (2) The court erred in overruling the railroad company's motion for new trial.

The decisive question argued under the first proposition is that the evidence was insufficient to support the verdict and judgment. In fact, this is the only question involved in this case; for, if the evidence was sufficient, then the court did not err in overruling the motion for new trial, and if the evidence was insufficient, then the court erred in overruling such motion. The evidence of defendant in error Simerly, as quoted by plaintiff in error in its brief, is as follows:

"Somewhere about the 7th of December, 1913, I had about 25 head of cattle, and on that day this cow was missing and I could not find her, and I looked for the cow something like a couple of days, and some one of Mr. Baker's folks found a cow on his place dead. I found her bruised in the hip and shoulder mighty bad. It was just 60 steps south of the right of way fence where we found the cow dead, and the fence was all down, and after we found the cow I went up on the track, and found the cow's tracks, and found where the cow had fell against the embankment, at a little cut, and tracked the cow out from the track. After the cow went up on the sod, we could not find any tracks any more at all. I did not notice where the cow entered upon the right of way. There were cow tracks on the right of way, and it showed where a cow had fallen against the bank, stumbled like, and went out of the right of way, and walked south."

Cross-examination:

"I saw where a cow fell; there was not any blood there. I saw cow tracks. The

cow had been seen there on the right of way; that is all I know about it. I do not know my cow tracks from the other cow tracks. She was bruised on the back part of the hip and the front part of the shoulder, I signed the statement. Defendant's Exhibit 1. The statement referred to contains the following: 'My cow, with other cattle, had been running in on right of way because right of way fence was down. My cow had been missing for five days when I found her about 60 yards southwest of right of way and mile post 275. At first I thought cow had been shot by hunters, but I skinned her and found bad bruises on right hip and top and right shoulder on top, which were black and bloodshot and jelled No other bruises, and no broken bones that I know of. Looked like she had been there four or five days, as the ground was rubbed about by cows. Could not tell that any hair was knocked off except a few scratches on hip. Hide weighed 40 pounds, which I sold to Tulsa Hide House at 8 cents a pound. * * *' I saw the tracks on the railroad right of way the day we found the cow. I don't know whether this cow made the tracks or not. There was no evidence that the cow had been sick; she had eaten twice a day at the house. She had been gone something like two or three days. I did not track her from the right of way over to where she was found."

The witness John Warner testified as follows:

"When we went to skin the cow, she was laying on her left side, and on her right hip there was a bruise; looked like something had hit her. We examined the cow tracks, and we could see them up to the sod. We saw a pretty big print down in the ditch, along the tracks, where it looked like a cow or some animal had fallen pretty hard. I saw the cow tracks on the right of way."

Cross-examination:

"The cow tracks were pretty fresh; looked like they had been made two or three days, or maybe not so long. I followed these tracks about as far as I could up to the sod—15 or 20 yards."

The testimony of Simerly and Warner was substantially corroborated by the witnesses C. M. Baker and Jesse Baker.

The only witness introduced by the railroad company was S. A. Querry, a hide buyer of Tulsa, who was introduced for the purpose of showing that he bought the hide that had been taken from the cow in question, that he paid full price for said hide, and that he did not pay full price for damaged hides. The witness said:

"All I remember is from the check book; shows there was a hide bought on January 6, 1914, from L. W. Simerly." That he paid 8 cents a pound for the hide, and that was what they were paying at that time for that class of hides, meaning undamaged hides.

There was no claim made by Simerly that the hide was damaged. The testimony of Simerly and the other witnesses was that the hide was not broken, but that the flesh on the shoulder and hip of the cow was badly bruised. All of the witnesses for Simerly testified that the right of way fence was down for some distance. The fact that the right of way fence was down is not disputed.

Section 1435, Rev. Laws 1910, makes it the duty of every railroad company operating a road within the state of Oklahoma to fence its right of way with a good and lawful fence. Section 1436 defines what is a lawful fence.

Section 1438 provides:

"Whenever any railroad corporation or the lessee, person, company or corporation operating any railroad, shall neglect to build and maintain such lawful fence, such railroad corporation, lessee, person, company or corporation operating the same, shall· be liable for all animals killed by reason of the failure to construct such fence."

Hence, in determining the question of the sufficiency of the evidence, and whether this evidence was sufficient to be left with the jury, or whether the court should have taken the case from the jury, it is necessary to consider all the material circumstances surrounding the case. In viewing such circumstances we have:

(1) That the railroad company had failed to construct and maintain a lawful fence, and was therefore guilty of negligence, which under the law rendered it liable for all animals that came through the defective fence and got killed by the railroad upon the right of way.

(2) We have a dead cow 60 yards south of the right of way, whose death it is not unreasonable to infer was caused by the bruises found upon her hip and shoulder.

(3) We have a set of circumstances, undenied, from which it was not unreasonable to infer that she was the same cow, or one of the cows, that had come through the defective fence, made tracks upon the right of way and along the right of way, and away from the track due south toward and within 40 steps of where she was found; and from these facts, considered in connection with the fact of the imprint or dent in the bank, which the witnesses all said looked like where a cow had been knocked off the track against the bank, together

with the fact that there were cow tracks, which they took to be hers, leading directly from the imprint in the bank toward where she lay dead, it was not unreasonable to infer that she had been knocked off the railroad by a passing train and had died from the effects thereof.

In other words, the picture disclosed to the jury was that Simerly had missed his cow; that she had been a healthy, hearty cow, accustomed to come up for her feed at night; that she was not a breachy cow, nor a fence breaker; that when Simerly went to hunt for her he found the right of way fence down for some distance, so that stock could pass back and forth over it, and onto it, and onto the tracks; that he found the tracks going over this defective fence, found tracks upon the right of way, found where it appeared that the cow or some other animal had been knocked off the right of way against the bank, making a dent or impression in the bank, found cow tracks at this dent in the bank, the same tracks leading directly south from this place toward where the cow was found, and found these tracks 20 steps from the railroad directly toward where the cow was found, and within 40 steps of where she was found, but that the sod from the end of the 20 steps to where she lay was so hard that no tracks were made, and finding the cow dead, and finding her badly bruised, as the evidence shows she was, it was not unreasonable for the jury to infer that she had been knocked off the railroad track by a passing train. In fact, as we view the picture that was presented to the jury, the sets of circumstances which it presented pointed more strongly to the inference which the jury drew than to any other inference.

If from all the circumstances it appeared to the jury more reasonable to infer that the cow had been knocked off the track by a passing train than it was to infer that she had been bruised by some other unknown means, then the court did not err in leaving it to the jury to draw its inference from the circumstances presented.

There was no dispute as to any of these circumstances; there was no dispute as to whether the fence was down; there was no dispute as to whether there were cow tracks on the right of way and along the track, nor any dispute that it appeared that the cow had been knocked off the track and made the dent in the bank, nor any dispute that tracks lead directly from this place in the bank toward where the cow was found, nor any dispute as to whether

she was bruised to the extent testified to by the witnesses.

It is not unreasonable to say that the circumstances, taken either separately or collectively, point to and tend to support the inference that the cow was killed by a passing train. As to whether they tended more strongly to support such inference than the inference that she might have been killed by some other means was a question for the jury to determine. It has been held by this court in Wichita Falls & Northwestern Ry. Co. v. Arnold, 56 Okla. 352, 156 Pac. 296, that:

"The fact that a fire which destroyed property originated from the sparks of a passing locomotive may be shown by circumstantial evidence."

To the same effect is W. F. & N. W. Ry. Co. v. Gant, 56 Okla. 727, 156 Pac. 672; also St. L. & S. F. R. Co. v. Shannon, 25 Okla. 754, 108 Pac. 401, 21 Ann. Cas. 1209.

In C., R. I. & P. Ry. Co. v. Wood, 66 Kan. 613, 72 Pac. 215, it was held:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury."

In Rippey v. Miller, 46 N. C. 479, 62 Am. Dec. 177, it was held:

"The rule adopted in criminal cases, * * * that, where circumstantial evidence is submitted for their consideration, the facts proved must be such as to preclude every other hypothesis but the guilt of the accused, does not apply in civil cases."

In Railway Co. v. Wood, supra, the Supreme Court of Kansas, in the opinion by Mr. Justice Cunningham, said:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain the verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable hypothesis. The jury are not infrequently called on to decide between two or more theories, and in doing so many exercise their own best judgment in accordance with their oath bound consciences. This must necessarily be so, for it is the province of the jury and not of the judge to determine whether the evidence better supports this or that theory. We invade their domain if we shall require them to say that a given set of circumstances are as consistent with one theory as with another. This court, in a very recent case (Railroad Co. v. Perry, 65 Kan. 792, 70 Pac. 876), had occasion to quote with approval the rule laid down by Prof. Greenleaf upon this subject, which is as follows:

'In civil cases it is sufficient if the evidence on the whole agrees with, and supports, the hypothesis which it is adduced to prove.' "

In view of these decisions, and in view of the circumstances surrounding this case, we do not feel at liberty to say that the inference drawn by the jury was unreasonable, nor that there was not sufficient evidence to justify such inference.

The judgment of the trial court is affirmed.