## MARLAND REFINING CO. v. SNIDER, Adm'r.

No. 15659—Opinion Filed Feb. 9, 1926.

Rehearing Denied Nov. 16, 1926.

**1. Appeal and Error—Discretion of Lower Court—New Trial for Newly Discovered Evidence.**

The granting or refusal of a new trial on the ground of newly discovered evidence rests largely within the sound judicial discretion of the trial court, and the ruling of the trial court in granting or refusing the motion will not be disturbed on appeal unless it is made to appear that such discretion has been abused.

**2. New Trial—Newly Discovered Evidence—Consideration by Court.**

In determining a motion for new trial on the ground of newly discovered evidence, the trial court is not concluded by the motion and the proof in that proceeding, but it is the duty of the trial court to consider such newly discovered evidence in connection with, and in the light of, the proceedings had and the evidence produced at the original trial and to consider the credibility of the proposed witness and the probable effect of such newly discovered evidence if a new trial should be granted; and unless it appears that the newly discovered evidence would, with reasonable probability, compel a different verdict, the motion should be denied.

**3. Evidence—Res Gestae—Admissibility.**

The question of the admissibility of statements as part of the res gestae is largely determined by the facts and circumstances of each case, and should in a great measure be left to the determination of the trial court.

**4. Evidence—Weight and Sufficiency—Circumstantial Evidence.**

Facts may be proven by circumstantial as well as by positive or direct evidence, and it is not necessary that the proof rise to that degree of certainty which will exclude every other reasonable conclusion than the one arrived at by the jury.

**5. Appeal and Error—Review—Excessiveness of Verdict.**

In determining whether a verdict is excessive, each case must be ruled chiefly on its own facts and the surrounding circumstances.

**6. Damages—Excessive Verdict for Personal Injury—Remittitur.**

Held, that the verdict for $10,000 is excessive, and a remittitur of $5,000 is ordered.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by L. R. Snider, administrator of the estate of Dona Bell Winingei, deceased, against the Marland Refining Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

W. K. Moore, H. E. Oakes, J. H. Foster, and Womack & Brown, for plaintiff in error.

Wilkinson & Sayre, for defendant in error.

Opinion by JARMAN, C. This was an action by L. R. Snider, administrator of the estate of Dona Bell Wininger, deceased, against the Marland Refining Company, a corporation, to recover damages for alleged bodily pain and mental anguish suffered and endured by plaintiff's decedent prior to her death, and for certain expenses incurred for medical services, etc. Verdict was returned for the plaintiff, upon which judgment was rendered, and the defendant brings error.

The Farmers Exchange store of Duncan, Okla., ordered 53 gallons of "first-grade" kerosene from the local plant of the defendant at Duncan. The defendant attempted to fill the order by delivering and placing in the tank of said store, 53 gallons of liquid, supposedly first-grade kerosene, knowing that the same was to be resold to the customers of said store as first-grade kerosene. Two gallons of liquid were purchased from said store for first-grade kerosene and taken to the home of Dona Bell Wininger, the decedent,

who the plaintiff alleges was fatally burned while building a fire in the cook stove with said liquid.

The first proposition urged by defendant is that the trial court erred in denying its application for new trial on the ground of newly discovered evidence.

The trial of the case was concluded late in the afternoon, and the witnesses were excused and the court took a recess for the purpose of preparing its instructions; when court reconvened, counsel for defendant in open court stated that during the recess they learned for the first time of a witness who heard the decedent state after the explosion that there were live coals of fire in the stove, and that she poured the kerosene out of the can upon the same in attempting to build a fire, and that when she started to light the kindling with a match the explosion occurred; that the defendant had exercised due diligence to present at the trial of the case all of the evidence material to the issues and that the evidence sought to be introduced was in fact newly discovered and material. It is significant to note that the name of this newly discovered witness was not disclosed to the court at that time. After the jury had returned its verdict, the defendant filed motion for new trial based upon the newly discovered evidence above referred to, and, at this time, the names of two witnesses, Virgil Wininger and his wife, Minnie Wininger, were disclosed as the parties who would testify to the matters disclosed in the motion for new trial as newly discovered evidence. The depositions of these parties were taken and quite a lengthy hearing was had upon said motion for new trial, resulting in the court's denying the same. Counsel for defendant insist that the overruling of said motion for new trial was an arbitrary act upon the part of the trial court.

The defendant pleaded contributory negligence on the part of the decedent, in that she had negligently and carelessly poured the kerosene on live coals in the stove, which caused the explosion. The defendant insists that, since the evidence of Virgil and Minnie Wininger was, in fact, newly discovered evidence, meeting all requirements of the rule with respect to the granting of a new trial on account thereof, the trial court should have granted a new trial and permitted the jury to pass upon the weight of said evidence and credibility of the witnesses, and that it was clearly an abuse of discretion on the part of the trial court in denying the defendant this right. It is a well-established rule, that granting or refusal of a new trial on the ground of newly discovered evidence is a matter largely within the judicial discretion of the trial court, and unless it is made to appear by the applicant that such discretion has been abused, the ruling of the trial court will not be disturbed upon appeal. M., K. & T. Ry. Co. v. Taylor, 69 Okla. 79, 170 Pac. 1148. But counsel for defendant insist that the credibility of witnesses and the probative value of newly discovered evidence are for the jury to determine, and that the same cannot be determined by the trial court; that facts made to appear by the newly discovered evidence might be considered as unimportant by the trial court, whereas the jury might look at them differently and consider them of importance. This contention, however, is contrary to the spirit of our statute, which not only provides that in motions for new trial on the ground of newly discovered evidence the truthfulness of the proposed evidence must be shown by affidavits, but also authorizes counter-affidavits to be filed by the adverse party, disproving or discrediting the newly discovered evidence, and, therefore, the trial court must of necessity determine the issue of the credibility of the witnesses and the probable weight of the newly discovered evidence. Section 575, C. S. 1921. It is also well settled that, in determining an application for new trial on the ground of newly discovered evidence, the trial court is not concluded by the petition and the proof in that proceeding, but may consider the same in connection with, and as affected by, and in the light of, the proceedings and the evidence offered during the original trial. C., R. I. & P. Ry. Co. v. Mosher (Kan.) 92 Pac. 554; Sexton v. Lamb, 27 Kan. 433.

Before the trial court would be warranted in granting a new trial on the ground of newly discovered evidence, it must be made to appear that the newly discovered evidence, when considered in connection with and in the light of the evidence developed upon the original trial, would, with reasonable probability, compel a different verdict. O. N. & B. H. R. R. Co. v. O'Donnell, 24 Neb. 753, 40 N. W. 298; C., R. I. & P. Ry. Co. v. Mosher, supra; Harris v. Thompson, 23 Kan. 372; Morgan v. Bell (Kan.) 21 Pac. 255. In the case of Asher v. Territory of Oklahoma, 7 Okla. 188, 54 Pac. 445, the defendant was tried and convicted of statutory rape upon one Bell Overstreet, a female under the age of 14 years. After the trial had been concluded, the defendant filed a motion for new trial on the ground of newly discovered evidence, and, upon the hearing of said motion, there was introduced an affidavit, executed after the original trial by Bell Overstreet, stating that she was over

the age of 14, and that her testimony given at the trial of the case was false. After considering said affidavit and hearing the testimony of Bell Overstreet, who was called by the county attorney to testify at the hearing on the motion for new trial, the trial court declined to grant a new trial of the case, and the Supreme Court in disposing of the question on appeal announced the following rule:

"The overruling of a motion for new trial, based upon newly discovered evidence, is not error where the evidence introduced on the hearing of such motion showed that the newly discovered evidence was not such as would probably change or modify the judgment and the sentence of the court."

We conclude that, in considering motions for new trial on the ground of newly discovered evidence, it is the duty of the trial court to consider such newly discovered evidence in connection with, and in the light of, the proceedings and the evidence produced at the original trial, and to consider the credibility of the proposed witness and the probable effect of such newly discovered evidence; and unless it appears that the newly discovered evidence would, with reasonable probability, compel a different verdict, the motion should be denied.

The question then is, Did the trial court abuse its discretion in denying the application for new trial under the rules hereinabove announced? The evidence, taken on the hearing of the motion for new trial, discloses that Virgil Wininger and Minnie Wininger, although husband and wife, lived together only occasionally, and had no fixed place of abode—practically floaters. Virgil Wininger admitted that he had pleaded guilty to selling liquor to a minor, that he had paid fines for gambling, that he had paid a fine for vagrancy. After the explosion, he drove a car for counsel for the plaintiff to see different parties in his endeavor to ascertain the facts pertaining to the explosion, and this was known by Virgil Wininger, but he never mentioned his having heard statements of the decedent as to the origin of the fire. The testimony of Virgil and Minnie Wininger, offered at the hearing on the motion for new trial, is unsatisfactory and unconvincing. The trial court properly concluded, we think, that the evidence of these two witnesses would not, with reasonable probability, compel a different verdict than that rendered in the original trial, and we cannot say that the trial court abused its discretion in denying the application for new trial.

The next proposition urged by defendant is that the trial court erred in admitting certain testimony of the witness, Mrs. Lee Wininger, as part of the res gestae. The testimony complained of was that given by the witness as to statements made by the decedent a few minutes after the explosion, and is as follows:

"A. Well, I went in and said, 'Oh, how did this happen?' and some one just spoke and made the remark, 'making a fire with oil,' and I said, 'Did she pour the oil on the fire?' and she heard me and said, 'No, I didn't.' I said, 'Dona Bell, how did it happen?' She said, 'I put kindling in the stove and struck a match, and before I got the match to the stove it exploded.' Q. Did she say anything else? A. She said she turned to run and run and stumbled over the can and it blew her up to the top of the ceiling. Said her head hit the top of the ceiling."

The question of the admissibility of evidence of this nature, as part of the res gestae, is largely determined by the facts and circumstances of each case.

A. H. Fuller resided at the home of Mr. Eaton, who lived across the street from the Snider home, and was the first person to reach the scene of the explosion and removed the decedent from the burning building. He testified that she was in great agony and crying for mercy; that the clothing of the decedent was practically burned from her body; that she was immediately carried across the street to the home of Mr. Eaton, a distance of about 150 feet. Mr. Eaton testified that he saw the decedent immediately after she was taken from the building by Mr. Fuller; that there was fire all over her and most of her clothing was burned off, and when she was pulled from the burning building she didn't say anything, but was mumbling and foaming at the mouth. Mr. Eaton immediately, and before the decedent was removed to his home, phoned for Dr. Weedn. Dr. Weedn testified that it was about five minutes from the time he received the call until he arrived at Mr. Eaton's home; that the decedent was burned all over; that she was burned black from head to foot; that she was suffering, was under excitement, and was praying. Mrs. Minnie Wininger, the witness whose testimony is complained of, testified that she rushed to the home of Mr. Eaton and got there before Dr. Weedn arrived; that immediately upon entering the room where the decedent was, she went to her bedside and said statement of the decedent was made. In disposing of this proposition, we may well adopt the language used by the court in the body of the opinion of the case of St. L. & S. F. R. R. Co. v. Fick, 47 Okla. 530, 149 Pac. 1126, which applies with full force here:

"A great many authorities are cited by counsel for both plaintiff and defendant purporting to sustain their respective contentions in regard to the admissibility of the porter's statement. However, as every case must be treated upon its own circumstances, we do not find the iteration and reiteration of the well-known rule and its application to many varying and dissimilar sets of facts to be particularly helpful. This court seems to be committed to the doctrine that the admissibility of this class of testimony ought to be left, in a great measure, to the discretion of the trial court. Smith v. C., R. I. & P. Ry. Co., 42 Okla. 577, 142 Pac. 398. And Mr. Wigmore in his work on Evidence (section 1750) is of the opinion that the courts 'should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the determination of the trial court.' "

We are unable to say, under the evidence recited above, and other circumstances, that the trial court abused its discretion in the admission of said evidence.

The remaining assignments of error, except the excessiveness of the verdict, may be disposed of under the general head that the evidence is insufficient to support the verdict.

Counsel for defendant contend correctly that, in order for the plaintiff to prevail, it was incumbent upon him to establish by a preponderance of evidence: (1) The negligent mixture by the defendant of kerosene with gasoline or other volatile substance prior to its delivery to the Farmers' Exchange store. (2) That the kerosene used by the decedent in kindling the fire was a portion of that purchased by Volna Snider from the Farmers' Exchange store.

It is conceded that these facts may be established by circumstantial evidence, and it is further conceded that there is no direct evidence to establish either of these propositions. As a basis for their argument, counsel for defendant make the following contention:

"To establish a theory by circumstantial evidence, in order that it may be accepted as a fact proved, the known facts relied on as a basis for the theory must be of such nature and so related to one another that the only reasonable conclusion that may be drawn therefrom is the theory sought to be established."

Counsel further contend that, in order for the plaintiff to recover, the circumstantial evidence introduced by the plaintiff as to the explosion and its cause must not only be consistent with the fact that it was caused by the use of the oil in adulterated form and was sold by defendant as high-grade kerosene, and that such was the proximate cause of the explosion and the consequent injury to the decedent, but that it must also be inconsistent with any other reasonable explanation. This contention is untenable. The rule to which this court is committed is that facts may be proven by circumstantial as well as by positive or direct evidence, and that it is not necessary that the proof rise to that degree of certainty which will exclude every other reasonable conclusion than the one arrived at by the jury. M., K. & T. Ry. Co. v. Simerly, 72 Okla. 251, 180 Pac. 551; Barker v. Creek Coal Mining Co., 80 Okla. 86, 194 Pac. 195; Midland Valley Railway Co. v. Taylor, 85 Okla. 95, 204 Pac. 1102; K. C. S. Co. v. Jones, 90 Okla. 231, 216 Pac. 909.

The question presented, therefore, is whether propositions (1) and (2) above were established by the circumstantial evidence produced. We think this question must be answered in the affirmative.

On the proposition that the kerosene used by the decedent in kindling the fire was a part of that purchased by Volna Snider from the Farmers' Exchange store, we have testimony tending to establish the following facts and circumstances: After purchasing the two gallons of kerosene from said store, which was placed in a five-gallon can, the same was immediately carried to the Snider home where it was placed on the front porch. There was no other kerosene at the Snider home except a little quantity in a fruit jar, which had been procured from a neighbor for the purpose of kindling fires. Goldie Snider, sister of the decedent, used all of the kerosene in the fruit jar in attempting to build a fire in the cook stove, but she was unable to get the fire started on account of the wood and kindling being wet. In a short time, the decedent undertook to build a fire in the cook stove, and at that time there were no coals of fire or fire of any description in the stove. Goldie Snider was busy with errands about the house but noticed the decedent preparing to kindle the fire. In just a short time, an explosion was heard in the kitchen, flames burst through the windows and the door, and were coming mostly from the floor. The clothing of the decedent was practically all on fire and she was burned over her entire body, and the five-gallon can in which the kerosene was purchased from the Farmers' Exchange store by Volna Snider was found near the cook stove with the bottom torn or blown off. These are sufficient facts and circumstances from which the jury might conclude or infer that the kerosene used by the de-

cedent in attempting to build the fire was a part of that purchased by Volna Snider from the Farmers' Exchange store.

On the proposition, whether there was a negligent mixture by the defendant of the kerosene with gasoline or other volatile substance prior to its delivery to said store, we have testimony tending to establish the following facts and circumstances in addition to those above detailed: During business hours, the Farmers' Exchange store left the tank open for the purpose of waiting on its customers, and the same was under the scrutiny of the employes, and at night and during the times when the store was not open for business, the tank was kept closed and locked. On the next morning after the explosion, at the instance and request of the manager of the plant of the defendant at Duncan, a sample of the oil in the tank of the Farmers' Exchange store was tested, which showed the same to be mixed with gasoline and of a high explosive character. The Bowser tank of the Farmers' Exchange store was empty when the defendant put the kerosene in question in the tank, and the Farmers' Exchange store made no other orders between the time said kerosene was placed in the tank and the date when this test was made. There was no other probable cause shown for the kerosene being mixed with gasoline in the tank of the Farmers' Exchange store. From these facts, established by proof, the jury was justified in drawing the inference that the kerosene was mixed with gasoline by the defendant prior to the time it was placed in the tank of said store.

Counsel for defendant urge the further proposition that the verdict of the jury should not be permitted to stand for the reason that the jury capriciously disregarded the positive, uncontradicted, and unimpeached testimony of witnesses introduced by the defendant without right so to do, since the positive testimony of said witnesses is not inherently improbable and is not contradicted by the physical facts. In support of this proposition, Hubbard Banking Co. v. Koetsch, 105 Okla. 227, 231 Pac. 207, is cited. The witnesses of the defendant testified positively that the kerosene delivered to said store was not mixed with gasoline and that the same was first-grade kerosene, meeting all the requirements of law, as shown by the test of the same made by the official inspector of the state. While this testimony is positive, it is contradicted by the facts and circumstances, and the inferential facts that may be drawn therefrom, produced on behalf of the plaintiff.

Therefore, the rule contended for is not applicable here.

The defendant contends that the verdict is excessive and appears to have been rendered under the influence of passion and prejudice. The verdict in this case was for $10,000. The decedent lived five days after the injury, and the record discloses that she suffered most intensely and was conscious of her pain and suffering, and as was said in the case of A., T. & S. F. Ry. Co. v. Rowe, 56 Kan. 411, 43 Pac. 683, "no definite measure can possibly exist for damages of this kind and no one can say just how severely another suffered, nor just how much money would be an equivalent for the suffering." In determining whether a verdict is excessive, each case must be ruled chiefly on its own facts and the surrounding circumstances. Counsel for plaintiff invite attention in their brief on another question involved in this action to case No. 16070, pending in this court on appeal, being an action between the same parties as the parties to the instant case, and styled L. R. Snider, Administrator of the Estate of Dona Bell Wininger, Deceased, v. Marland Refining Company, a Corporation, for the recovery of damages, for the use and benefit of the next of kin of the decedent, occasioned by the alleged wrongful death of said decedent. This court will, therefore, take judicial notice of said action, which discloses that a verdict was returned therein in favor of the plaintiff for the sum of $16,000. While that is a separate and distinct action from the instant case and is not controlling in any manner in the disposition of any of the questions involved here, yet in the light thereof and in view of the further fact that, while the decedent suffered intensely, damages were awarded therefor at the rate of $2,000 per day, we think the verdict, by comparison with other cases, is excessive. Under all the facts and circumstances, we think that a verdict for $5,000 would be fair and commensurate. For this reason, the verdict must be vacated and set aside and a new trial granted, unless the plaintiff will agree to and file a remittitur of $5,000.

The judgment of the trial court is affirmed upon a remittitur of $5,000 being filed by the plaintiff. Otherwise, the judgment of the trial court is reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 830 §2813; 2 R. C. L. p. 217; 1 R. C. L. Supp. p. 453; 4 R. C. L. Supp. p. 93; 5 R. C. L. Supp. p. 83. (2) 29 Cyc. p. 901; 20 R. C. L. p. 289; 3 R. C. L. Supp. p. 1051; 4 R. C. L. Supp.