### BARKER v. CREEK COAL & MIN. CO.

No. 9887—Opinion Filed Dec. 14, 1920.

Rehearing Denied Jan. 5, 1921.

(Syllabus by the Court.)

1. **Evidence — Circumstantial Evidence — Weight and Sufficiency.**

In a civil case, facts may be proven by circumstantial evidence the same as by direct evidence, and the circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury.

2. **Trial—Instructions—Requisites.**

The instructions of the court should clearly and intelligently set forth the law as applicable to the issues and evidence submitted, without being conflicting, contradictory, confusing, or misleading.

3. **Master and Servant—Action for Negligent Death of Servant—Instructions.**

The giving of instruction No. 6 to the jury was confusing and misleading and not a correct instruction of the law under the facts in the case.

Error from Superior Court, Okmulgee County; R. E. Simpson, Judge.

Action by Mary Barker against the Creek Coal & Mining Company for damages for negligent death of her husband. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Giddings & Giddings, for plaintiff in error.

W. W. Wood and W. W. Witten, for defendant in error.

McNEILL, J. This action was commenced in the superior court of Okmulgee county by Mary Barker, widow of Joseph L. Barker, against the Creek Coal & Mining Company to recover damages for the death of her husband, Joseph L. Barker, caused by the negligence of the defendant in permitting loose rocks and slate to accumulate around the top of the mining shaft without safely guarding the mouth of said shaft, with the result that while said deceased was in the shaft entering the cage or elevator, a rock fell from the top of said mine, striking said defendant on the head, causing instant death.

Defendant answered, admitting the deceased was in the employ of the company, but denied the other allegations of the petition, and pleaded, further, facts in mitigation of damages. Upon the trial of the case to the jury, a verdict was rendered for the defendant. From said judgment the plaintiff appealed, and for reversal assigns the giving of instruction No. 6; said instruction being as follows:

"You are further instructed that in determining whether the rock or slate which it is alleged killed Joseph Barker fell from the surface near the mouth of the mine, you cannot enter into the field of speculation or conjecture. The plaintiff must prove that fact as any other fact by the evidence in the case; and unless you believe she has so proven, your findings will be for the defendant; and you are further instructed that if after a fair and full consideration of all the facts and circumstances in evidence in the case, you are unable to determine from

whence the rock or slate that is alleged to have killed Mr. Barker did fall, then your findings and verdict will be for the defendant."

It is contended that the evidence did not warrant the giving of said instruction, and the same tended to confuse the jury and lead them to believe the opinion of the court was that plaintiff's case rested upon conjecture and speculation.

The act of negligence alleged by the plaintiff was that the defendant negligently and carelessly permitted coal, slate, rock, etc., to accumulate at or near the mouth of the mine, and failed to make proper safeguards to prevent said coal and rock from falling into the shaft and left it dangerous for the men when getting off and on the cage at the bottom of the shaft, and that the defendant knew or should have known that said coal, rock, and slate which were accumulating at said place were dangerous to the employes below.

The evidence is not very conflicting, and may be summarized as follows:

The shaft extended from the surface of the ground to a level about 300 feet beneath the surface, where coal was being mined, this being the only level in the mine, and the deceased upon the date of the accident was working in said level. Two cages were installed in the shaft, extending from the surface to the bottom of the shaft, and were used to hoist coal, rocks, and other material from the level of the mine up through the shaft to a tippling or dumping platform some 50 feet above the surface, and also to raise and lower the men to and from this level. These cages generally alternate in their operation; when one is at the bottom the other is at the top of the mine, or on the dumping station.

On the 28th of January, 1917, about four o'clock, the deceased and others in the mine had quit work and were preparing to enter the cage to be hoisted to the top of the ground. As the deceased and the other men were entering the cage, a large rock struck deceased on top of his head, making a deep hole therein and killing him instantly. A few minutes prior thereto the other cage had been hoisted from the bottom of the mine loaded with coal, slate, or rock to the dump, which was some 50 feet above the surface, where the rock, coal, or dirt was dumped on the dump pile. No one saw the rock strike the deceased, although he was surrounded by at least a half-dozen men when struck.

The evidence disclosed that on the east side of the shaft, rock, coal, slate, and other substances accumulated, the same having fallen from the tippling or dump station when the cages were being dumped or unloaded. In order to prevent said accumulations from falling into the shaft, the company had built a wall or fence by erecting some scantlings and nailing heavy boards to the inside of the scantling, the same being a distance of about 20 inches from the east side of the mouth of the shaft. The height of the wall does not appear. Plaintiff produced evidence that upon this date, the accumulation of rocks and coal behind said wall was higher than the wall, and as a natural result, when the rock, coal, or slate would fall from the tippling above, the same would fall upon the stone or rock or coal that had accumulated and might roll over the wall and drop into the shaft or knock other rock, coal, or slate over the wall into the shaft.

One of defendant's witnesses stated the accumulation on said day was about as high as the wall, but that the same was not higher than the wall. The evidence as to the amount of accumulations around the mouth of the shaft or behind this wall was conflicting.

In regard to the installation of the cages, the evidence disclosed that there was a distance of about eight inches between the outside of the cage and the outside wall of the mine, and that if a rock fell from the top, it would either fall down the shaft in the space where the cages were installed and if so hit the top of the cage, or it might fall down the small space between the wall and the cage. There was evidence on the part of the defendant that at some places this space would not exceed four inches, and the defendant contended that a rock the size of the one which was supposed to have struck the defendant could not have fallen down that space, and no one heard the rock hit the top of the cage and there were no marks on the top of the cage disclosing that it had done so.

The evidence is conclusive that the deceased was struck by a rock of sufficient size and force to fracture the head and side of the face and make a large hole therein and instantly to kill him. The evidence is also conclusive that this rock necessarily came down through the shaft, as it could not come from the bottom of the mine, nor could it come from the side of the mine, and there is no evidence in the record that it could come from the walls of the shaft.

The court gave instruction No. 2, which is as follows:

"If you find from the preponderance of the evidence in this case that the deceased, Joseph Barker, received injuries as alleged

in the petition of plaintiff, and that defendant was negligent and careless in properly safeguarding the deceased while engaged in his employment below, or its servants were guilty of negligence and carelessness in causing rock to fall from, at, or near the mouth of the mine where said rock was dumped, or failing to exercise ordinary precaution in preventing the same from falling, or failing to use some device, which in the exercise of ordinary care it should have done, which would prevent the rock from falling upon the deceased, and if you so find that from either one or all of these particulars, as the proximate cause thereof, the deceased received injuries, and thereby lost his life, then it will be your duty to find for the plaintiff."

This instruction correctly stated the issues to guide the jury in th trial of the case. The question presented in this instruction was exactly what the attorney for the defendant in his opening statement to the jury advised the jury was the issue in the case and stated as follows:

"They allege in their petition that we permitted slate and rock to accumulate at the mouth of the mine, negligently and carelessly permitted this to accumulate, and on account of that negligence, that rock fell into the mine and the man was killed. That is the sole issue you are to try in this case. Our contention is that that is not true, we did not permit it to accumulate there, that there was no negligence on the part of the defendant company, that it was simply one of these unaccountable accidents that nobody can foresee or prevent. It occurred through no negligence on the part of the company or anybody else. * * * If this man was hit by a rock falling down the mine, it must, from some cause, have fallen down through that eight-inch space, and struck this man just as he was in the act of getting on the cage. If he had been a second later, or a second sooner, he would not have been hit."

Instruction No. 6, advising the jury, in determining whether the rock or slate fell from near the surface of the mine, that the jury could not enter into the field of speculation and conjecture, and if they could not ascertain this fact they should find for the defendant, we think was misleading. The evidence in the case conclusively shows that the rock or slate necessarily fell either from the surface or from the tippling above, striking the surface and rolling into the shaft, or it might have fallen from the tippling direct into the shaft, or it might have been lying on the surface and been knocked into the shaft by a fallen rock from the tippling. It was not so much from where the rock fell, so long as it fell down the shaft, as whether the company was negligent in safeguarding the shaft to prevent coal, slate, or rocks from falling into the same. The court in this instruction tended to confuse the jury in instructing that the only issue was, from where the rock came. If there had been any contention that the rock came from any other place than down through the shaft, this might have been proper, but there is no intimation in the record that the same could come from any other place, and the only way the jury could find that it came from any other place was by speculation and conjecture.

This same kind of an instruction was commented on by the Supreme Court of Missouri in the case of Peperkorn v. St. Louis Transfer R. Co. (Mo. App.) 154 S. W. 836, where the defendant requested a similar instruction, and the appellate court, in passing upon the instruction, stated as follows:

"There was no ground for any speculation, conjecture, or guesswork in this case; no reason to suppose that the death occurred in any other way than by means of this train. Hence the instruction, cautioning the jury against indulging in speculation, conjecture, and guesswork, asked by appellant, was properly refused. That instruction, as asked, instead of cutting off conjecture, would have thrown the door wide open for it. By its concluding sentence it would have set the jury to guessing and conjecturing for a cause, instead of confining them to the only known cause disclosed by the evidence. The old and leading case of Buesching v. St. Louis Gas Light Co., 73 Mo. 219, 39 Am. Rep. 503, settles this proposition beyond controversy. There it is held that presumptions are not to be allowed in the face of known facts. The very able and exhaustive opinion in that case has been followed in every case since considered by our appellate courts in which that proposition has arisen."

This instruction further advised the jury that if they were unable to tell where the rock or slate came from, they were to find for the defendant. It was not a question of where the rock came from, so long as it came through the mouth of the shaft, but the right of recovery depends on whether the mouth of the shaft was properly safeguarded. We think this instruction is erroneous for another reason. The jury must decide the issues upon the evidence and the natural inferences that may be drawn from the evidence, and if there is no evidence to prove a certain state of facts, and it is necessary for the jury to guess or conjecture to find said facts in order to make a case for the plaintiff, it is the duty of the court to sustain a demurrer. It is not necessary that facts be proven by direct evidence, but they may be proven by circumstantial evidence, as was stated by this court in the case of M., K. & T. R. Co. v. Simerly, 72 Oklahoma, 180 Pac. 551. This court stated as follows:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict,

need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury."

If a court instructs the jury that they cannot enter into the field of speculation and conjecture to find certain facts to exist, the court should also instruct the jury that facts may be proven by circumstantial evidence. The court should not point out any particular fact and tell the jury that fact cannot be proven by speculation or conjecture, or that it may not be proven by circumstantial evidence. The instructions should be given to apply to all facts necessary to be proved either by plaintiff or by defendant, and the court should not point out any particular question of fact and direct the attention of the jury to that particular question as the only one that cannot be proved in that manner.

"The instructions of the court should clearly and intelligently set forth the law as applicable to the issues and evidence submitted, without being conflicting, contradictory, confusing, or misleading," Kansas City, M. & O. R. Co. v. Roe, 50 Okla. 105, 150 Pac. 1035.

We think the instruction was confusing and misleading, and especially the last part of the instruction wherein the jury was instructed that if they were unable to tell from whence the rock came, without any qualifications whatever, they should find for the defendant. It is, however, contended by defendant in error that this court will not reverse a judgment upon the giving of an erroneous instruction unless it can be said that the instruction has deprived the party of some right or resulted in a miscarriage of justice. From a reading of the entire record, the undisputed facts lead us to believe the giving of the instruction did confuse the jury. Under this instruction the principal fact in the case for the jury to determine was from whence the rock came, instead of the question of whether the shaft was properly safeguarded, and by reason of not safeguarding the shaft the rock fell into the shaft, thereby killing deceased.

For the reasons stated, the judgment of the court is reversed, and the cause remanded, with instructions to grant the plaintiff in error a new trial.

RAINEY, C. J., and HARRISON, KANE, JOHNSON, BAILEY, and COLLIER, JJ., concur. PITCHFORD and HIGGINS, JJ., dissent.