Beulah CHASE, an Incompetent person, and her Guardian, W. P. Horn, Plaintiffs in Error,

v.

James Thomas CHASE, Richard Tolbert Chase, Norma Jean Chase, now Lindsay, Shirley L. Chase, now Lovelace, and Saundra L. Chase, now Snyder, Defendants in Error.

No. 39920.

Supreme Court of Oklahoma.

Oct. 29, 1963.

Rehearing Denied Dec. 17, 1963.

Clem H. Stephenson, Seminole, for plaintiffs in error.

William Bishop, Seminole, for defendants in error.

BERRY, Justice.

Although the parties here appear in reverse order, they will be referred to as they appeared in the lower court and by name.

In this action plaintiffs are five of the six children of Virgil Chase, deceased. Defendant Beulah Chase is the widow of Virgil Chase and is the mother or stepmother of plaintiffs. Defendant W. P. Horn is the legal guardian of defendant Beulah Chase and also of a minor child (not a party to this action) and was originally appointed and acted as guardian of two of the plaintiffs during their minority.

The petition alleged, in so far as material here, that upon the death of Virgil Chase, his wife, defendant herein, and the minor children became entitled to homestead rights in a house and several acres of land in Seminole County, Oklahoma; that after abandonment or termination of the homestead rights, the homestead was then to be divided one-third to the widow and two-thirds to the children; that subsequent to the death of Virgil Chase, defendant W. P. Horn was appointed guardian over the persons and estate of defendant Beulah Chase, incompetent, and three of the six children who were minors; that in his capacity as guardian defendant W. P. Horn assumed the active management of the homestead, collected the rents, paid the taxes and insured the premises against fire and other damage and paid the premiums therefor; that the insurance policy was purchased in the name of W. P. Horn, Guardian of Beulah Chase, in a total amount of $10,000.00 divided $7500.00 on the house and $2500.00 on household goods; that a total loss by fire was sustained resulting in the payment of the policy by the company to defendant Horn in the sum of $9,944.73 of which amount $2,444.73 was retained by him on behalf of his ward,

defendant Beulah Chase, as damages to household goods; that the remaining $7500.00 was retained by him in his capacity as guardian for the alleged purpose of restoring the damaged premises in so far as possible; that subsequent to the fire the remaining property was sold by the heirs and the guardian and the proceeds therefrom divided, one-third to defendant widow and two-thirds to the children, five of whom are plaintiffs here; and that plaintiffs are entitled to their proportionate share of the insurance proceeds on the house.

Defendants answered by general denial and set up by way of defense the defendant widow's homestead right in the property, her derivative rights therefrom and her insurable interests in the property. Defendants further averred that they were under no obligation to protect the heirs' interests and concluded that the insurance inured solely to the widow's benefit.

The case was tried by the court without a jury on this principal issue. The evidence consisted of the testimony of plaintiff James T. Chase, the testimony of defendant guardian W. P. Horn and certain exhibits. The trial court found in favor of plaintiffs and gave judgment for their prorata share of the insurance proceeds. From the lower court's order overruling motion for new trial, defendants lodged this appeal.

Defendants brief but two questions, i. e., a life tenant is not required to insure the interests of a remainderman against loss from fire; and in a law action for recovery of a specific sum of money, defendants are entitled to a trial by jury.

In support of this conclusion reached as to question No. 1, defendants cite 33 Am. Jur., p. 838, Sec. 332; 46 C.J.S. Insurance § 1143, p. 21; 126 A.L.R., p. 345, and cases from other jurisdictions all of which sustain this general rule of law.

To our minds the mistake made by defendants is, however, that this rule does not square with the facts here. In the first instance we are not dealing with a true life tenant-remainderman relationship. Here the record reflects the existence of a sur-viving spouse and minor children who have a right under the law to possess and occupy the homestead. We held in Kemp et al. v. Turnbull et al., 198 Okl. 27, 174 P.2d 384, that:

"The right of the surviving spouse to continue to possess and occupy the homestead on the death of the owner, under 58 O.S.1941 § 311, is not an estate in land, but is a mere personal right or privilege, distinct from the interest which the surviving spouse takes in the land by inheritance or devise, and the right may not be alienated, separate and apart from an estate in the land, so as to confer upon the grantee the rights of the surviving spouse. Such right is different from a devise of a life estate to the surviving spouse."

We held in In re Gardner's Estate, 122 Okl. 26, 250 P. 490, that:

"As defined by section 1, art. 12, of the Constitution, a 'homestead' is the land itself, and not the buildings thereon. The 'homestead right' is the right to occupy and live upon the land rather than the right to occupy and live in the buildings thereon.

\* \* \* \* \* \*

" \* \* \* his right to live upon the land is absolute, though he may have any number of buildings thereon and occupy a different one each day, and whatever homestead right he has at the time of his death passes to his widow upon his death."

And in Syllabus 7 of the same case, it is said:

"The right of a survivor to occupy and live upon the homestead is superior to the right of coheirs to a property interest in the estate. The property interest of the heirs is suspended during the occupancy of the homestead by the survivor. \* \* \*"

In the instant case the issue is further compounded by the fact that the widow was incompetent and a guardian was ap-

pointed to take charge of the homestead. The guardian was required under 30 O.S. 1961 § 16, to "* * * keep safely the property of his ward. * * * not permit any unnecessary waste or destruction of the real property, * * * maintain the same, with its buildings and appurtenances, out of the income or other property of the estate, and deliver it to the ward at the close of his guardianship, in as good condition as he received it." The guardian in this case, under the record, appears to have fully performed his trust down to the insuring of the dwelling and recovery of the policy proceeds after loss occurred.

The record is clear that defendant (guardian) proposed to use the insurance proceeds to reconstruct the dwelling on the homestead but that this was prevented by the subsequent sale of the land by all parties, including the defendant widow through her guardian.

We have previously shown that defendant guardian was guardian not only of the widow but of the minor children as well. He could not deny that he acted for the children as well as their mother. Two of the plaintiffs here were minors at the time of his appointment but it is not clear as to their status at the time of the fire. However, in view of our conclusion reached here, such status is not of prime concern. Our research reveals considerable conflict among the various jurisdictions with regard to the issue under consideration. See 126 A.L.R., p. 336 et seq.

■ However, the better rule, to our minds, is that under circumstances here, where the guardian has the duty to preserve and protect the estate of his wards, who are both probate homestead tenants and owners as well, the sum received as proceeds from fire insurance should either be used in rebuilding or held for the benefit of the remaindermen, with the homestead tenants being entitled to the use of the fund during the continuance of the homestead estate. See Crisp County Lumber Co. v. Bridges et al., 187 Ga. 484, 200 S.E. 777, 126 A.L.R. 333. Since the pro-

bate homestead has been terminated by the sale of the land, nothing remains but to distribute the insurance proceeds of the dwelling to the heirs according to their interests. Such a distribution is contained in the trial court's judgment.

■ As to the assignment of error by defendants to the court's refusal to grant a trial by jury, we are persuaded that the rule laid down in Rose v. First Nat'l. Bank of Stigler, 93 Okl. 120, 219 P. 715, that "Where a petition shows upon its face that the action is based upon a breach of trust, and asks for an accounting, such action is an equitable one, and the fact that a recovery of money is sought in such action does not change the character of the action" is applicable here.

We have examined the record, weighed the evidence and find no error.

Judgment of trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON and WILLIAMS, JJ., concur.

JACKSON and IRWIN, JJ., dissent.